**In the Matter of Hugh R. CLARK and Joanne Clark, Debtors.**

**No. 82–C–1012–C.**

United States District Court, W.D. Wisconsin.

June 16, 1983.

John G. Barsness, Barsness Law Offices, Madison, Wis., for debtors.

Peter F. Herrell, Jordan & Herrell, Eau Claire, Wis., for creditor Federal Land Bank of St. Paul.

OPINION AND ORDER

CRABB, Chief Judge.

This is an appeal from a decision of the United States Bankruptcy Court for the Western District of Wisconsin brought by the Federal Land Bank of St. Paul. The bank contends that the bankruptcy court

erred in confirming a Chapter 13 plan of reorganization that allows the debtors to cure the arrearages in the installment payments on their mortgage and to reinstate the mortgage despite the fact that a judgment of foreclosure had been obtained by the bank.

## FACTS

At the hearing on confirmation of the plan, the bankruptcy court found as fact that the plan proposed by the debtors would provide monthly payments sufficient to fund the plan, that over a period of 36 months the payments to the Federal Land Bank would cure the prior default in payments while maintaining current payments, so that the mortgage to the bank would be reinstated, and that the payment arrangements proposed under the plan dealt permissibly with the bank and with all of the other creditors.

Not articulated by the bankruptcy judge but implicit in his findings are these additional facts derived from the record:

On September 3, 1974, the debtors obtained a loan from the Federal Loan Bank of St. Paul secured by a note and mortgage on real estate in Jackson County, Wisconsin.

On September 30, 1981 the bank began a foreclosure action on the note and mortgage in Jackson County Circuit Court. On February 2, 1982, judgment was entered in favor of the bank in the amount of $23,821.78.

The circuit court found that the debtors had abandoned the premises pursuant to Wis.Stats. § 846.102 and that they had made no homestead claim pursuant to Wis.Stats. § 846.11. The court authorized a foreclosure sale at any time after April 2, 1982.

As of May 27, 1982, when the debtors filed their Chapter 13 petition, no foreclosure sale had been held.

## OPINION

The sole question on appeal is the validity of the bankruptcy judge's interpretation of 11 U.S.C. § 1322(b)(5) as permitting cure of a default and reinstatement of payments on a residential mortgage even after judgment of foreclosure has been obtained by the mortgagee.

The relevant provisions of 11 U.S.C. § 1322(b) are the following:

(b)... the [Chapter 13 reorganization] plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

In holding that cure and reinstatement were permitted, the bankruptcy judge relied upon the decision of the Court of Appeals for the Second Circuit in *In re Taddeo,* 685 F.2d 24 (2d Cir.1982). In *Taddeo,* the mortgagee had accelerated the payment schedule and begun foreclosure proceedings against the debtors who were in default on their residential mortgage. Before the mortgagee could obtain a judgment of foreclosure, the debtors filed a Chapter 13 proceeding which stayed the foreclosure action. The bankruptcy court denied the mortgagee's motion for relief from automatic stay, finding that the mortgagee had sufficient security under the debtors' plan which provided for payment of the arrearages in the installment payments over the three-year life of the plan and for restoration of the mortgage and its original payment schedule. The bankruptcy court read 11 U.S.C. § 1322(b) as analogous to 11 U.S.C. § 1124(2), which the bankruptcy court interpreted as permitting the nullification of

acceleration clauses in Chapter 11 corporate reorganizations.[1]

In affirming the district court's affirmation of the bankruptcy court's decision, the court of appeals concluded that the Taddeos' Chapter 13 plan providing for deacceleration of their mortgage was what Congress had intended when it provided for the curing of defaults in § 1322(b)(2).

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "deaccelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code.
>
> $*$ $*$ $*$ $*$ $*$ $*$
>
> Secondly, we believe that the power to "cure any default" granted in § 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in § 1322(b)(2) because we do not read "curing defaults" under (b)(3) or "curing defaults and maintaining payments" under (b)(5) to be modifications of claims.

*In re Taddeo,* 685 F.2d at 27.

The reasoning in *Taddeo* leaves no doubt that pre-judgment acceleration of residential mortgages can be cured under a viable Chapter 13 plan. But *Taddeo* does not resolve the question raised on this appeal: whether the curing of defaults that is permitted under subsection (b)(5) of § 1322 is permissible after entry of a court judgment of foreclosure.

On this question, the bankruptcy courts are in disarray. Within the same state and the same district can be found opinions reaching directly conflicting results, with one bankruptcy judge holding that the power to cure a default in a residential mortgage payments in a Chapter 13 plan is co-extensive with the right to redeem property that has been foreclosed upon, and another bankruptcy judge holding that the right to cure under a Chapter 13 plan is extinguished by the entry of a judgment of foreclosure. *See, e.g., In re Thompson,* 17 B.R. 748 (Bkrtcy.W.D.Mich.1982) (debtor could cure a mortgage payment default although he had not filed his Chapter 13 petition until two weeks after the foreclosure sale of his residence, but before the expiration of the period of redemption) and *In re James,* 20 B.R. 145 (Bkrtcy.E.D.Mich. 1982) (debtor could not cure defaults after his residence was sold in foreclosure sale; § 1322(b)(5) does not apply where the debtor's equity has been foreclosed; the only right retained by debtor after foreclosure sale is the right of redemption). *See also In re Jenkins,* 14 B.R. 748 (Bkrtcy.N.D.Ill.1981) (debtors *cannot* cure arrearages under a Chapter 13 plan on a residence against which a foreclosure judgment has been obtained; Chapter 13 plan must provide for payment of amount of judgment); *In re Kokkinis,* 22 B.R. 353 (Bkrtcy.N.D.Ill.1982) (debtors *can* cure arrearages under Chapter 13 plan so long as statutory period of redemption has not expired).[2]

---

**1.** As the court of appeals pointed out, that interpretation was erroneous. *In re Taddeo,* 685 F.2d 24, 28–29 (2d Cir.1982). *See In re Madison Hotel Associates,* 82–C–694 (W.D. Wis., decided May 16, 1983).

**2.** Even the same judge can reach opposite conclusions on this question. *See Matter of Breuer,* 4 B.R. (Bkrtcy.S.D.N.Y.1980), in which Judge Schwartzberg permitted the debtor to pay his arrearages on the first and second mortgages on his residence and keep his monthly installments current under a Chapter 13 plan, despite the fact that the mortgagee had obtained a judgment of foreclosure against the debtor's residence before the Chapter 13 petitioner had been filed, and *In re Canady,* 9 B.R. 428 (Bkrtcy.D.Conn.1981) in which Judge Schwartzberg, sitting by designation, held that Chapter 13 does not authorize deacceleration on a residential mortgage; that the bankruptcy court cannot "resurrect a mortgage that has

A number of bankruptcy courts have adopted the position that under § 1322(b)(5), a residential mortgage is subject to deacceleration so long as the debtor retains any equity in the mortgaged property. *See, e.g., In re Chambers,* 27 B.R. 687 (Bkrtcy.S.D.Fla.1983); *In re Young,* 22 B.R. 620 (Bkrtcy.N.D.Ill.1982); *United Companies Financial Corp. v. Brantley,* 6 B.R. 178, 179 (Bkrtcy.N.D.Fla.1980); *Matter of Breuer,* 4 B.R. 499 (Bkrtcy.S.D.N.Y.1980). Indeed, even the apparently disparate results in *In re Thompson,* 17 B.R. 748 and in *In re James,* 20 B.R. 145 can be explained as merely a difference of opinion between the two courts as to when the debtor's equity in the mortgaged property was extinguished under Michigan law and not as a difference of opinion as to whether the mortgagor's right to cure lasted beyond the entry of a state court judgment of foreclosure.

A larger number of bankruptcy courts have held that the right to cure and reinstate does not survive the entry of a judgment of foreclosure and have denied confirmation of Chapter 13 plans that did not provide for payment of the full amount of the judgment plus costs within the life time of the plan. *See, e.g., In re Mattocks,* 15 B.R. 379 (Bkrtcy.E.D.N.Y.1981); *In re Maiorino,* 15 B.R. 254 (Bkrtcy.D.Conn.1981); *In re Jenkins,* 14 B.R. 748; *In re Land,* 14 B.R. 132 (Bkrtcy.N.D.Ohio 1981); *In re Pearson,* 10 B.R. 189 (Bkrtcy.E.D.N.Y.1981); *In re Canady,* 9 B.R. 428 (Bkrtcy.D.Conn. 1981); *In re Robertson,* 4 B.R. 213 (Bkrtcy. D.Colo.1980).

Still other bankruptcy courts have held that after judgment the mortgagor retains only the right to redeem provided under state law and that the automatic stay provisions of 11 U.S.C. § 362 do not operate to stay the running of the period of redemption. *See, e.g., In re Martinson,* 26 B.R. 648 (Bkrtcy.D.N.Dak.1983). *See also First Financial Savings & Loan Assoc. v. Winkler,* 29 B.R. 771 (D.C.N.D.Ill., 1983).

been laid to final rest by a state court"; and that the Chapter 13 plan must provide for payment of the entire amount of the judgment lien during the life of the plan. *Id.* at 4. There is

Clearly, the bankruptcy judges who have permitted cure and rehabilitation of home mortgages after the entry of foreclosure judgment have done so out of the best of motives: to carry out "one of the primary purposes of Chapter 13 . . . to save homesteads." *In re Young,* 22 B.R. at 622. Nevertheless, their construction of § 1322 finds no support in either the language or the legislative history of the statute.

Nothing in § 1322(b) suggests that "curing of any. default" may be read as including the right to set aside a state court judgment and reinstate prejudgment mortgage obligations and rights. Curing a default is not the same thing as suspending or annulling a state court judgment. To assume that the former includes the latter is an assumption that cannot withstand scrutiny.

If Congress had intended such an expansive and novel interpretation of "curing a default," it would have made its intention explicit. Where Congress wants to permit an action affecting a judgment or other court order, it is capable of making that intention clear. *See, e.g.,* 11 U.S.C. § 362, the automatic stay provision, in which, in subsection (a)(2), there is specific provision for the staying of the enforcement "of a judgment obtained before the commencement of the case under this title." *See also* 11 U.S.C. § 108, which uses the terms "applicable law," "order entered in a proceeding," and "an agreement," and 11 U.S.C. § 101 which distinguishes among three different types of liens: (1) security interests, *i.e.,* liens "created by agreement," § 101(37); (2) judicial liens, *i.e.,* liens "obtained by judgment . . . or other legal or equitable process or proceeding," § 101(27); and (3) statutory liens, *i.e.,* liens "arising solely by force of a statute on specified circumstances or conditions," "but not including judicial liens or security interests," § 101(38).

no reference in either opinion to the other and no citation to any state law that might explain the different results.

Moreover, to read § 1322(b)(5) as permitting "cure" of a judgment of foreclosure would require a court to disregard the remainder of that subsection which permits "the curing of any default . . . and maintenance of payments . . . on any . . . secured claim *on which the last payment is due after the date on which the final payment under the plan is due. . . .*" (Emphasis added.) A mortgage is such a secured claim. A judgment is not; it is a secured claim that is to be paid in full immediately. Unless the language of § 1322(b)(5) is to be ignored entirely, it would seem to apply to the claim of a judgment creditor. In *Taddeo,* the court held that this language did not prevent the debtors from curing and deaccelerating even though under New York law the acceleration of the mortgage made *all* of the payments due immediately, but the reasons for the holding in that case do not apply to a situation in which a judgment has been entered against the mortgagor.

In *Taddeo,* the mortgagee's claim rested upon the mortgage and promissory note, both of which provided for payments to continue beyond the life of the plan. In the instant case, the creditor's claim is secured by a state court judgment which makes no provision for payments beyond the life of the plan.

Although in *Taddeo* the court of appeals read "curing of any default" more expansively than it could have been read under state law, it does not follow from that decision that the right to cure survives *any* event short of total divestment of the debtors' equity. In *Taddeo,* the court rested its holding on a number of factors: the legislative history that indicated the Congressional intent to allow debtors to cure defaults and repeal the *contractual* consequences; the many similar provisions in the Bankruptcy Code for the curing of defaults under § 1110(a)(2) (for example, a trustee may continue in possession of aircraft and ships by curing defaults and making payments in original lease or contract); the policy reasons for encouraging good faith negotiations among debtors in the Taddeos's situation; fear of the threat that "the

mortgagee will tip the balance irrevocably by accelerating," *In re Taddeo* 685 F.2d at 27; the concern that "[c]onditioning a debtor's right to cure on its having filed a Chapter 13 petition prior to acceleration would prompt unseemly and wasteful races to the courthouse," *Id.;* and, finally, the conclusion that restricting debtors to cure only as provided under state law would leave them with fewer rights under the new Bankruptcy Code than they would have had under the old Act.

None of these factors supports an expansion of the right to cure beyond the entry of judgment. There is no legislative history suggesting that Congress intended to give debtors the right to set aside or suspend state court judgments of foreclosure, and the many provisions in the Bankruptcy Code for the curing of defaults provide no support for the proposition that the right to cure survives the entry of a judgment of foreclosure.

The policy considerations that justify the abrogation of a contractual right to accelerate do not justify abrogation of state court judgments. Once a state court action has reached the point of entry of judgment, the possibilities of negotiating a good faith settlement have been exhausted. And while it may be that unsophisticated debtors will not have consulted counsel before the acceleration clause on their mortgage is triggered, it is far less likely that they will not have consulted counsel before the state court action against them has been concluded.

Finally, there is no evidence that under the old Bankruptcy Act, debtors had any right to set aside a judgment of foreclosure, although debtors could enjoin foreclosures if they filed before entry of judgment. *Hallenbeck v. Pennsylvania Mutual Life Insurance Co.,* 323 F.2d 566 (4th Cir.1963); *In re Freed & Co.,* 534 F.2d 1235 (6th Cir.1976). Thus, there is no basis for arguing that not permitting post-judgment cure would leave debtors less well off than they had been under the old Act.

716

I conclude that the decision of the court of appeals in *In re Taddeo* does not direct the outcome of this case. I am persuaded that Section 1322(b)(5) does not permit residential mortgagors such as the appellees, to cure their defaults and restore their mortgage payment schedules once a judgment of foreclosure has been entered against them. Therefore, this case will be remanded to the bankruptcy court with directions to deny confirmation of the debtors' Chapter 13 plan in its present form.

Because the question is not before me on this appeal, I express no opinion as to whether the Code permits a debtor to stay the running of the court-ordered period of redemption and subsequent foreclosure sale in order to pay the judgment in full over the life of the plan. *Cf., In re Lynch,* 12 B.R. 533 (Bkrtcy.W.D.Wis.1981) where this was permitted, with *First Financial Savings & Loan Assoc. v. Winkler,* 29 B.R. 771, where it was held that the debtor retains only the right to redeem within the statutory period or within sixty days after the order for relief, whichever is later. 11 U.S.C. § 108(b).

I am persuaded that if the protections of Chapter 13 are to be extended to individuals whose homes have been foreclosed against and even sold at foreclosure sales, it should be by Congressional action, rather than judicial interpretation. Permitting cure after a mortgagee has expended the money and resources to obtain a judgment of foreclosure injects an element of uncertainty into the residential mortgage market that may have adverse consequences for lower-income home buyers. Moreover, there are practical problems not resolved by those courts that have permitted cure after judgment, as pointed out by the bankruptcy court in *In re Pearson,* 10 B.R. 189 (Bkrtcy. E.D.N.Y.1981):

> What would be the status of an unsatisfied judgment when the Chapter 13 plan terminated after three or five years, and the jurisdiction of the bankruptcy court ended? Could the mortgagee then seek enforcement of his judgment? If not, why not, since the judgment had never been satisfied? True, the Chapter 13 plan had cured arrearages, but it had not paid off the judgment. It would be up to the state courts to decide to what extend the judgment survived. How this would be done procedurally is unclear. Equally unclear is what the result would be. Nor would the results necessarily be uniform. For a period of years, neither the debtors, nor the mortgagees, would know their rights.

### ORDER

IT IS ORDERED that the decision of the United States Bankruptcy Court confirming the debtors' plan pursuant to Chapter 13 is REVERSED and this case is REMANDED to the bankruptcy court with instructions to deny confirmation of the plan. The costs of this appeal are assessed equally to both parties.