**In re MADISON MADISON INTERNATIONAL OF ILLINOIS, P.C., Debtor.**

**MADISON MADISON INTERNATIONAL OF ILLINOIS, P.C., Plaintiff,**

**v.**

**MATRA, S.A., S A Matra, Raymond Kaiser Engineers, Inc., Defendants.**

**Bankruptcy No. 86–03258.**
**Adv. No. 87–0030.**

United States Bankruptcy Court,
E.D. Wisconsin.

Aug. 10, 1987.

Clifton G. Owens, Milwaukee, Wis., for plaintiff-debtor.

Richard F. Friedman, Chicago, Ill., for defendants.

OPINION

JAMES E. SHAPIRO, Bankruptcy Judge.

This case deals with the scope of 11 U.S.C. § 525(b)[1]. § 525 is the anti-discrimination provision of the Bankruptcy Code. Because of comparisons made by this court between subsections (a) and (b) of § 525 in

---

**1.** At a hearing on April 23, 1987, the plaintiff acknowledged that it was relying solely upon § 525(b) and that § 525(a) is not involved.

its analysis, the statute is set forth in its entirety in the footnote below.[2]

Madison Madison International of Illinois, P.C. ("plaintiff") is the debtor in this pending Chapter 11 case and is in the business of providing architectural, designing and planning services to the construction industry. It commenced an adversary proceeding against Matra, S.A., S A Matra and Raymond Kaiser Engineers, Inc. (referred to at times as "defendants" and at other times as either "defendant Matra" or "defendant Kaiser")[3] to enjoin the defendants from entering into an agreement with anyone other than the plaintiff for certain engineering services to be provided on the automated guideway intraport "people mover" system at the Chicago O'Hare International Airport. The plaintiff had performed some services for defendant Matra in preparing its proposal on the "people mover" system. Defendant Matra is the general contractor and successful bidder on the "people mover" system contract. Defendant Kaiser, a consultant and subcontractor to defendant Matra for this project, was in the process of negotiating with the plaintiff for the plaintiff to act as its subcontractor and provide "conceptual engineering design services."

Shortly after the plaintiff filed its Chapter 11 petition on October 10, 1986, all further negotiations with the plaintiff stopped. The issue is whether such conduct by the defendants, in terminating its negotiations with the plaintiff because of the filing of the plaintiff's Chapter 11 petition, is a form of discrimination prohibited under § 525(b).

The plaintiff has alleged that the defendants, by their actions were "reneging on the proposed agreement" and that such conduct violated § 525(b).

In response, the defendants have filed a motion to dismiss this complaint based upon: (1) lack of jurisdiction over the person pursuant to Fed.R.Civ.P. 12(b)(2) and (2) failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). The defendants have also filed, in the alternative, a motion for change of venue.

The parties have agreed that this court initially rule upon the 12(b)(6) motion to dismiss which addresses whether § 525(b) of the Bankruptcy Code applies, since that determination might make all of the other issues moot.

For reasons more fully explained in this opinion, this court concludes that § 525(b) does not apply and grants the motion to dismiss.

**2.** § 525. *Protection against discriminatory treatment.*

(a) Except as provided in the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §§ 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. §§ 181–229), and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat. 422; 7 U.S.C. § 204), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but

before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

(b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

**3.** Matra, S.A. and S A Matra, designated in the complaint as separate entities, are one and the same. The correct name of defendant Kaiser is Kaiser Industries, Inc., not Raymond Kaiser Engineers, Inc.

There is a paucity of legal authority on an interpretation of § 525(b). This may be partially due to its newness, having been effective only for those cases filed on or after October 9, 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. It may also be partially due to its clarity. *See, In re Hopkins*, 66 B.R. 828 (Bankr.W.D.Ark.1986), referring to "the clear language of subsection 525(b)."

There are several reasons why the plaintiff is not within the protective ambit of § 525(b). In the first place, § 525(b) prohibits discrimination by a "private employer." It is therefore implicit that there be an existing employer-employee relationship between the parties. Here, neither defendant was a private employer of the plaintiff, and, by the same token, the plaintiff was not an employee of either defendant. § 525(b) is limited to discrimination in employment. It is not as broad as the ban on governmental discrimination contained in § 525(a). 1 *Norton Bankr. L. & Prac.* § 27.06 (1986 Annual Cumulative Supplement). The fact that there is a possibility of a contract between the parties is not sufficient.

Secondly, § 525(b) mandates that a plaintiff seeking to invoke this provision be an "individual." Here, the plaintiff is a corporation. Throughout the Bankruptcy Code, a distinction is drawn between an "individual" and a "corporation." For example, that distinction appears in § 109(e) which states that only an individual with a regular income can file under Chapter 13. This excludes a corporation. *Forestry Products, Inc. v. Hope*, 34 B.R. 753 (M.D.Ga.1983), which holds that a one shareholder corporation is not eligible for Chapter 13 relief. Similarly, the plain language of § 109(g) states that no individual may be a debtor under this provision who has been a debtor in a case pending at any time within the preceding 180 days. In *Yamaha Motor Corp. v. Shadko, Inc.*, 762 F.2d 668 (8th Cir.1985), the Eighth Circuit affirmed both the bankruptcy court and the district court, holding that § 523 (which deals with exceptions to discharge) does not include corporate debtors, stating 762 F.2d at 670:

"Congress clearly did not intend the term 'corporate debtor' to be used interchangeably with the term 'individual debtor,' as such a construction would render meaningless employment by Congress of the term 'individual'."

*See also, In re Trafalgar Associates*, 53 B.R. 693 (Bankr.S.D.N.Y.1985).

Because § 525(b) is unambiguous, no resort to its legislative history is necessary. *Garcia v. U.S.*, 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984); *Rubin v. U.S.*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *Wilson v. Harris Trust & Sav. Bank*, 777 F.2d 1246 (7th Cir.1985); *In re Goldrich*, 771 F.2d 28 (2d Cir.1985); *U.S. v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *In re Spears*, 69 B.R. 511 (Bankr.S.D.Iowa 1987).

In spite of the foregoing, a glance at its legislative history supports this court's interpretation of § 525(b) as being inapplicable to the case at bar.

§ 525 was intended to codify the result of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). *Perez v. Campbell* held that a state financial responsibility law which conditioned reinstatement of a debtor's driver license after an accident on repayment of a tort judgment, notwithstanding a discharge of that debt in bankruptcy, was unconstitutional and conflicted with the "fresh start" policy of the bankruptcy laws. *In re Goldrich*, 771 F.2d 28 (2d Cir.1985), while recognizing that § 525 was intended to be extended beyond the particular facts of *Perez v. Campbell*, also cautioned that it was not without its limitations. *Goldrich* proclaimed that § 525 was intended to deal with the issuance, renewal and revocation of liquor licenses, building permits and the like, but cannot be stretched so far beyond its plain terms to encompass extensions of credit by governmental units. *Goldrich*, 771 F.2d at 30, also explained that precluding consideration of prior bankruptcies in making credit decisions was something never contemplated by this statute, stating:

"We are reluctant to probe beyond the plain language of the statute.

Congress' failure to manifest any intention to include items of a distinctly different character is also unambiguous. In the absence of ambiguity, no further inquiry is required."

When § 525(b) was enacted in 1984, it represented a further extension of the anti-discrimination provisions to the private sector, intending to address those situations where a private employer terminated the employment of or discriminated against with respect to the employment of an individual who had filed a petition in bankruptcy.

The plaintiff argues that this is "a terribly ripe case to continue the Congressional intent to defer to the courts to continue to mark the contours of the anti-discrimination provision in pursuit of a sound bankruptcy policy" and that "the broad interpretation mandated by the Congressional history and intent establishes without a doubt that this relationship falls squarely within the prohibition of 11 U.S.C. § 525(b)." This court finds that argument to be unpersuasive. Any attempt to liberalize this statute, in the face of its plain meaning, is inappropriate. Had Congress intended an expansive interpretation to § 525(b), it could have so stated. Where Congress wants to permit an action, it is capable of making that intention clear. *In re Clark*, 32 B.R. 711 (W.D.Wis.1983). Judge Easterbrook made the following observation in *Matter of Erickson*, 815 F.2d 1090 (7th Cir.1987) at 1094:

"Too much 'liberality' will undermine the statute as surely as too literal an interpretation would."

*See also, Wilson v. Harris Trust & Sav. Bank*, 777 F.2d 1246 (7th Cir.1985) at 1249:

"We cannot find a cause of action under § 525 when Congress has expressly declined to provide one."

This is not a case where following the clear language of the statute will lead to an absurd result. Courts must not engage in judicial legislation. They are not empowered to tinker with Congress's statutory schemes, even if they believe they can improve upon them. *See, In re Sunstone Ridge Associates*, 51 B.R. 560 (D.Utah 1985); *In re Burrell*, 25 B.R. 717 (N.D.Cal. 1982).

Chief Justice Marshall in *Osborne v. Bank of the United States*, 22 U.S. (9 WHEAT) 740, 866, 6 L.Ed 204 (1824), observed:

"Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are the mere instruments of the law and will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislative; or, in other words, to the will of the law."

The plaintiff also argues that a correct interpretation of § 525(b) requires the court to conclude that the word "individual" is but one of several classes entitled to protection under this statute. The plaintiff develops this argument by pointing out that, following the word "individual," the words "a debtor or bankrupt under the Bankruptcy Act" and "or an individual associated with such debtor or bankruptcy" also appear in § 525(b). The plaintiff therefore concludes that classes in addition to individuals are protected. This is a fallacious argument. The phrases "debtor or bankrupt under the Bankruptcy Act" and "an individual associated with such debtor or bankrupt" must both be read in conjunction with the preceding word "individual" which is qualified by these phrases. § 525(b) must therefore be read as meaning that no private employer may terminate the employment of or discriminate with respect to the employment against an individual who is or has been one of the following:

1. A debtor under this title;

2. A debtor or bankrupt under the Bankruptcy Act; or

3. An individual associated with such debtor or bankrupt.

Because of certain notable differences between § 525(a) and § 525(b), *In re Coleman American Moving Services, Inc.*, 8 B.R. 379 (Bankr.D.Kan.1980), cited by the plaintiff, is not pertinent. A careful reading of § 525(b) reveals that only two of the three discriminatory prohibitions which appear in § 525(a) also are in § 525(b). § 525(b) states that no private employer may: (1) terminate the employment of an individual or (2) discriminate with respect to employment against an individual (meaning such things as could affect the debtor's promotion, salary increases or job duties). To this extent, § 525(b) precisely tracks the language of § 525(a). However, § 525(a) also contains a third discriminatory prohibition ("deny employment to"), which precludes governmental units from denying employment to potential employees. The fact that this particular prohibition was not carried over to § 525(b) cannot be ignored. *In re Hopkins*, 66 B.R. 828 (Bankr.W.D. Ark.1986); Chobot, *Anti-discrimination Under the Bankruptcy Laws*, 60 Am. Bankr.L.J. 185, 197 (1986). *Coleman* dealt solely with § 525(a) and with certain alleged discriminatory actions taken by a governmental unit against the debtor for refusing to award to that debtor a contract for the packing and crating of personal belongings, thereby constituting a denial of employment within the meaning of § 525(a). *Coleman* is therefore distinguishable.

The plaintiff is attempting to force the defendants to enter into a contract with it and is using § 525(b) as a sword, rather than a shield. Nothing in the legislative history of § 525(b) contemplated such a result. Both subsections (a) and (b) of § 525 were intended to prevent coercion of a debtor, by virtue of his or her employment, into paying or reaffirming a discharged debt. The facts before this court are so dissimilar from those circumstances which led to the enactment of § 525(b) as to make it inapplicable.

This court fully understands that the plaintiff is a minority owned and operated corporation endeavoring to fashion a successful Chapter 11 reorganization. Nevertheless, it cannot let its sympathy dictate the result in this case, in view of the clear language of § 525(b). If there is to be a change to include the circumstances of this case within the meaning of § 525(b), that change must emanate from the legislature, not from the court.