**In re Lois C. HARDY, Debtor.**

**Bankruptcy No. 91–20469.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Jan. 28, 1997.

Ellen C. Carlson, Wright & Carlson, P.L.L.C., Virginia Beach, VA, for debtor.

Peter V. Chiusano, Willcox & Savage, P.C., Virginia Beach, VA, for Marine Bank.

## MEMORANDUM OPINION AND ORDER

STEPHEN C. ST. JOHN, Bankruptcy Judge.

This matter came before the Court on December 3, 1996 on a Motion To Reopen by

the debtor, Lois C. Hardy, to have the Court reopen her Chapter 7 case pursuant to 11 U.S.C. § 350. After consideration of the evidence introduced at trial and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor, a self-employed attorney on the Eastern Shore, filed for Chapter 13 protection in 1991. The debtor's case was subsequently converted to a Chapter 7 liquidation, and her debts were discharged on July 1, 1992. The debtor recites two legal bases to support her Motion To Reopen. First, the debtor alleges that, after her bankruptcy filing, some of her clients were told by the Marine Bank ("the Bank") not to utilize her legal services when closing real estate transactions between the Bank and its customers. This conduct is alleged by the debtor to be unlawful discrimination pursuant to 11 U.S.C. § 525(b). The debtor's second reason for her Motion To Reopen is that, one year after her debts were discharged, a prepetition judgment creditor recorded a judgment lien against certain real property belonging to the debtor. The debtor alleges that the recording of this lien was a malicious act done in violation of 11 U.S.C. § 727 because it "cast[s] a shadow" on the debtor's real estate title by suggesting that there is a post-petition judgment against the debtor. As the parties appear to have reached a resolution with respect to the § 727 title claim, the Court limits its holding on the Motion to Reopen to the claim of alleged discrimination by the Bank under § 525(b).

## CONCLUSIONS OF LAW

■ Notwithstanding the fact that Hardy's bankruptcy case is closed and all scheduled debts have been discharged, the Court retains jurisdiction over the debtor's case for certain purposes. *In re Winebrenner*, 170 B.R. 878, 881 (Bankr.E.D.Va.1994). One of the specific purposes enumerated is if a party claims a right or remedy created by one of the specific Bankruptcy Code sections. *In re Banks–Davis*, 148 B.R. 810, 812–13 (Bankr. E.D.Va.1992). As § 525(b) is a specific Bankruptcy Code section, the motion to reopen the bankruptcy case under § 350(b) falls unequivocally within the Court's jurisdiction. The Court's next step, therefore, is to determine if the closed bankruptcy case should be reopened.

■ Under § 350(b) of the Bankruptcy Code, there are three conditions in which the Court can grant the reopening of a bankruptcy case: to administer assets, to accord relief to the debtor, and for other cause. *In re Dove*, 199 B.R. 342, 345 (Bankr.E.D.Va.1996). Notwithstanding the three prongs of § 350(b), it is axiomatic that the Court has final discretion in deciding whether to reopen a case. *In re Walker*, 198 B.R. 476, 478 (Bankr.E.D.Va.1996)(citing *Thompson v. Virginia*, 16 F.3d 576, 581–82 (4th Cir.1994), cert. denied 512 U.S. 1221, 114 S.Ct. 2709, 129 L.Ed.2d 836 (1994); *Hawkins v. Landmark Finance Co.*, 727 F.2d 324, 326 (4th Cir.1984)). As there are no assets to administer in this case, the Court must base its decision to reopen upon whether the Court determines that either relief can be accorded to the debtor or that other "cause" exists for reopening.

### I. Reopen The Bankruptcy Case To Accord Relief To The Debtor

■ Before the Court will reopen the bankruptcy case to accord relief to the debtor under § 350(b), the Court must determine if the underlying cause of action to the Motion To Reopen is "likely to be sustained when considered on its merits." *In re Carter*, 156 B.R. 768, 770–71 (Bankr.E.D.Va. 1993).[1] This a two step process requiring the Court to answer two questions. First, are there enough facts on the record that were pleaded with sufficient specificity and presented at the motion hearing to enable the Court to make a determination without prejudicing any party's rights? Second, after it is determined that there is sufficient

---

1. With respect to according relief to the debtor, Judge Shelley in *In re Carter* concluded that a case can be reopened if the "debtor's allegation of [a] violation of the automatic stay is likely to be sustained when considered on its merits." *In re Carter*, 156 B.R. 768, 770 (Bankr.E.D.Va. 1993).

information before the Court, is the underlying cause of action likely to be meritorious?

1. *Is the matter sufficiently pleaded to enable the Court to determine the merits of the underlying cause of action?*

 The moving party, the debtor in this case, has the burden to demonstrate that there is a sufficient legal basis to reopen the case. *In re Winburn,* 196 B.R. 894, 897 (Bankr.N.D.Fla.1996)(citing *In re Pagan,* 59 B.R. 394, 396 (Bankr.D.P.R.1986)). In filing its Motion to Reopen, the debtor filed a motion along with accompanying exhibits, an affidavit which laid out the relevant facts, and a memorandum with supporting case law. The debtor further pleaded her case on December 3, 1996 at a hearing before this Court. In its defense, the Bank filed an Objection To Motion To Reopen Case and a memorandum highlighting relevant case law favorable to the Bank's objection. The Court believes that both sides were given the opportunity to argue their case and that any Due Process concerns with respect to opportunity to be heard have been satisfied. Therefore, in light of the pleadings filed, arguments heard during the oral hearing, and the legal memoranda submitted, the Court concludes that the record is sufficient to permit the Court to adjudicate the merits of the underlying cause of action to the Motion to Reopen.

2. *Is the underlying cause of action likely to be sustained on its merits?*

 Having concluded that there is a sufficient amount of facts on the record, the Court must determine the merits of the underlying cause of action. Section 525(b) of the Bankruptcy Code states:

No *private employer* may terminate the employment of, or discriminate *with respect to employment* against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, *solely* because such debtor or bankrupt—

(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or

(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

*11 U.S.C. § 525(b)* (emphasis added).

At first blush, the Court believes that a key requirement of § 525(b) is that there must be an employee-employer relationship with the debtor as an employee of the private employer defendant. However, based on the pleadings and arguments made by counsel, it is stipulated that the debtor was not an "employee" employed by the Bank. As a result of this apparent dichotomy between the Court's perception of the requirements § 525(b) and the facts in this case, the Court diligently attempted to locate a reported case involving a § 350 Motion to Reopen, § 525(b) discrimination, and a plaintiff debtor who is not a direct "employee" of the defendant employer.

Although no case directly square with the facts of this case could be located, the Court finds persuasive the holding in *In re Henry,* 129 B.R. 75 (Bankr.E.D.Va.1991), where Judge Tice concluded that there was no employment discrimination under § 525(b) because the debtors were not employees of the defendant credit union. *Id.* at 78. Other courts have agreed with Judge Tice that the debtor must be a debtor employee of the alleged discriminating employer in order for § 525(b) to be triggered. *In re Bradford,* 181 B.R. 910, 915 (Bankr.E.D.Tenn.1995) ("[s]ection 525(b) of the Bankruptcy Code specifically and emphatically prohibits discrimination by an employer based on its employee's [sic] having taken advantage of a right created by federal statutes."); *In re Spaulding,* 116 B.R. 567, 572 (Bankr. S.D.Ohio 1990); *In re Madison Madison Int'l of Illinois,* 77 B.R. 678, 680 (Bankr. E.D.Wis.1987)("[i]t is therefore implicit that there be an existing employer-employee relationship between the [defendant and the debtor]"); *see In re Briggs,* 143 B.R. 438, 444–45 (Bankr.E.D.Mich.1992); *see In re Kanouse,* 153 B.R. 81, 82–83 (Bankr.S.D.Fla. 1993). Moreover, as corroboration to the

employee-employer relationship requirement in *In re Henry,* the Court located several cases in which the bankruptcy courts found § 525(b) discrimination because the debtor employee was terminated or was refused employment by its private employer. *In re Sweeney,* 113 B.R. 359, 362–63 (Bankr. N.D.Ohio 1990); *In re Vaughter,* 109 B.R. 229, 236–37 (Bankr.W.D.Tex.1989); *In re Tinker,* 99 B.R. 957, 958–60 (Bankr.W.D.Mo. 1989); *In re Hopkins,* 81 B.R. 491, 496 (Bankr.W.D.Ark.1987); *In re Hicks,* 65 B.R. 980, 983 (Bankr.W.D.Ark.1986).

On the other hand, the Court notes that some bankruptcy courts have eviscerated the employee-employer requirement that was deemed integral in *In re Henry* and the other aforementioned cases. For example, the courts in *In re Patterson,* 125 B.R. 40, 54–55 (Bankr.N.D.Ala.1990), and *In re Callender,* 99 B.R. 378, 380 (Bankr.S.D.Ohio 1989), held that the debtors' respective credit unions violated § 525(b) by closing the debtors' account and terminating their relationships with the debtors. The Court, nevertheless, believes that these cases are distinguishable from the current matter. First, the defendants were credit unions that were affiliated with and provided a work related function to the debtors' employer. *In re Patterson,* 125 B.R. at 54–55 ("[s]ection 525(b) can now require such a result when *employment-affiliated* benefits are denied solely based on bankruptcy") (emphasis added); *In re Callender,* 99 B.R. at 379. Second, notwithstanding the court's admonishment in *In re Callender* that the term "employer" in § 525(b) be "given a broad reading,"[2] the Court, as discussed *infra,* simply disagrees with that court's expansive interpretation of the plain language of § 525(b).

The debtor applies the expansive employer interpretation paradigm highlighted in *In re Patterson* and *In re Callender* to argue that the employer-employee requirement should be broadly interpreted to include non-employee-employer relationships. In other words, the debtor wants the Court to include independent contractor relationships within the umbrella of protection provided by the § 525(b) language. To support its position, the debtor cites *In re McNeely,* 82 B.R. 628 (Bankr.S.D.Ga.1987), in which a contract logger was allegedly denied future logging contracts because he filed for Chapter 11 bankruptcy protection. *Id.* at 631. The court in *In re McNeely,* in holding that an independent contractor[3] is protected by the provisions of § 525(b), concluded that the employment relationship contemplated by § 525(b) is broader than the strict state law definition in which employee-employer and independent contractor relationships are mutually exclusive. *Id.* at 632. The court added that "[t]he distinction between an employee and an independent contractor is essential in allocating potential tort liability under state law, but for purposes of federal bankruptcy law the distinction is largely irrelevant." *Id.*

The Court, however, declines to apply the holding in *In re McNeely* as it applies to the facts of this case and, therefore, the debtor's attempt to invoke its reasoning as well as the holdings in *In re Patterson* and *In re Callender* fails. For the following three reasons, the Court declines to follow the Georgia Bankruptcy Court's lead in *In re McNeely* in extending § 525(b) protection to a non-employee of the defendant.

■ First, the Court disagrees with applying the *In re McNeely* holding to the current case because the court stated that the interpretation of "employment" for § 525(b) purposes is not limited to the more narrow common law or state law definition. *In re McNeely,* 82 B.R. at 632 ("[t]he distinction between an employee and an independent contractor is essential in allocating potential tort liability under state law, but

---

**2.** "The term 'employer' in the present [§ 525(b)] context should be given a broad reading, not bound by conventional state law concepts." *In re Callender,* 99 B.R. 378, 380 (Bankr.S.D.Ohio 1989) (citing *In re McNeely,* 82 B.R. 628 (Bankr. S.D.Ga.1987)).

**3.** "The employment relationship of the Plaintiff and [the defendant] was carefully structured so as to create an independent contractor relationship." *In re McNeely,* 82 B.R. at 631.

for purposes of federal bankruptcy law the distinction is largely irrelevant."). The court suggests further that the common law definition of employment does not apply to federal law causes of action and that national bankruptcy policy is the lynchpin to concluding that the independent contractor logger is an "employee" within the scope of employment contemplated by § 525(b). *See id.* ("[w]ith this national policy in place, it would be peculiar indeed if Congress intended that the word 'employment' as used in Section 525(b) parallel the meaning of that legal term of art under state law."). However, in contemplating the definition of an employee-employer relationship in a federal cause of action context, the Fourth Circuit Court of Appeals does apply a common law standard. *Haavistola v. Community Fire Company of Rising Sun, Inc.,* 6 F.3d 211, 220 (4th Cir.1993). When "independent contractor status is at issue," the Fourth Circuit looks to the judicially created test in *Garrett v. Phillips Mills,* 721 F.2d 979 (4th Cir.1983), for its guidance as to whether a person is an employee or an independent contractor for the defendant employer.[4] *Id.* at 219–20; *Garrett,* 721 F.2d at 981. The Fourth Circuit stated that this test is rooted in common law and is "traditionally used when deciding whether an individual can claim employee status." *Haavistola,* 6 F.3d at 220. Although the causes of action in *Haavistola* and *Garrett* were federal Title VII and ADEA actions, respectively, the Court believes that the Bankruptcy Code's federal genesis makes the *Garrett* Test equally applicable. The Fourth Circuit concluded that the hallmark of an employee-employer relationship is the common law requirement that the employer "controls" the employee. *Haavistola,* 6 F.3d at 220 ("[t]he common-law standard traditionally used when deciding whether an individual can claim employee status emphasizes the importance of the employer's control over the individual"). The Court, however, is mindful that "control is still the most important fac-

tor to be considered, but it is not dispositive" and, consequently, must also consider the following factors when applying the *Garrett* Test to determine if there is an employee-employer relationship:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Haavistola,* 6 F.3d at 222 citing, *Garrett,* 721 F.2d at 982 ("we noted that crucial to the finding of control sufficient to make one an employee is consideration of the [aforementioned] factors"). Thus, the employer's control over the employee plus evidence of the existence of the other factors will lead the court to pierce the independent contractor relationship and treat the independent contractor as an actual employee of the employer. Applying the *Garrett* Test and after consideration of all of the relevant factors, the Court concludes that the debtor, as an attorney representing a customer of a bank in a real estate loan closing, is not an "employee" of the Bank.

In summary, the first reason that the Court disagrees with *In re McNeely* is that, in light of the Fourth Circuit's holdings in *Haavistola* and *Garrett,* the Court is precluded from applying the holding in *In re McNeely* to determine the reach of § 525(b)

---

**4.** The Court notes the analysis undertaken by the Fourth Circuit in *Weber v. Comm'r of I.R.S.,* 60 F.3d 1104, 1110–11 (4th Cir.1995), to determine if an independent contractor is actually an employee of the employer. Nonetheless, the Court believes that this test is more germane to determining the definition of an "employee" within the scope of federal income tax law rather than within the Bankruptcy Code context.

discrimination protection to a non-employee of the defendant-employer. The Fourth Circuit requires a consideration of common law factors to determine the definition of "employee" in § 525(b); therefore, the Court can not treat as irrelevant the common law distinction between an employee and independent contractor nor can it rely solely on national bankruptcy public policy to justify its interpretation. *Haavistola*, 6 F.3d at 222, citing, *Garrett*, 721 F.2d at 982; *see In re McNeely*, 82 B.R. at 632. Unlike in *In re McNeely* the facts of the case when filtered through the proper judicial standard lead to the conclusion that the plaintiff debtor is not in an "employment" relationship with the defendant within the context of § 525(b).

■ The Court's second reason for declining to apply the holding in *In re McNeely* is that the facts integral to the court's holding that the independent contractor logger is entitled to § 525(b) discrimination protection are not square with facts in the current case before the Court. One factual distinction is that the defendant in *In re McNeely* was an actual creditor of the debtor. *In re McNeely*, 82 B.R. at 630. Because the pre-bankruptcy debtor was a sole proprietor with "limited credit," the defendant assisted the debtor to purchase logging equipment and encouraged the debtor to obtain financing from its sister corporation.[5] However, the record suggests that the defendant's succor turned to retribution soon after the debtor's Chapter 11 filing. *See id.* The debtor's disclosure statement proposed to pay the creditor a nine and a half percent (9½%) interest rate rather than the financing statement's contracted interest rate of seventeen and a half percent (17½%); thus, the creditor would incur an eight percent (8%) reduction in the interest rate that it would be paid on its loan. *Id.* at 631. The court concluded that, as a result of this reduction in the interest rate paid to its sister corporation, the defendant terminated its logging contract with the debtor. *Id.* at 633–34. However, in the matter before the Court, the Bank is neither a creditor of the debtor nor is there

any suggestion of discrimination as revenge for the Bank having suffered losses as a direct result of the debtor's bankruptcy.

The other factual distinction is that, in *In re McNeely*, the debtor was "an independent contractor hired to cut and haul wood ... [who] worked exclusively for the defendant." *Id.* at 630. In addition, the defendant went as far as recommending the type of equipment to buy and from where it can be purchased. *Id.* These factors were ostensibly persuasive to the court and led it to hold that the independent contractor relationship contractually created by the parties was merely a facade for an employee-employer relationship that is within the scope of § 525(b). *Id.* at 631–32. The debtor in this matter, however, was not in a relationship whereby she worked exclusively for the Bank. Furthermore, she did not receive advice or financing assistance for capital expenditures. Unlike *In re McNeely* where the debtor was in a direct financial relationship with the defendant, the debtor here is in a third party relationship with the Bank and the loan customers. Furthermore, as discussed *supra,* the Court believes that the facts in this case do not give rise to the legal conclusion that the debtor is an employee of the Bank within the protection of § 525(b). Thus, even if the Court agreed with the holding in *In re McNeely*, the facts in the present case are too attenuated to make that holding applicable.

■ The third, and most significant, reason that supports the Court's disagreement with the holding in *In re McNeely* is that the Supreme Court in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989), instructed the bankruptcy courts to construe the meaning of code sections in accordance with the meaning of its plain language. Section 525(b) states that "[n]o private employer may terminate *the employment of,* or discriminate ... against ... an individual ... who ... is ... a debtor ... solely because ... such [individual] ... is or has been a debtor ..." *11 U.S.C. 525(b)*

---

5. The defendant would make deductions made from the debtor's weekly contract payment and transfer these amounts to the sister financing

company as loan repayments. *In re McNeely*, 82 B.R. at 630.

(emphasis added). The plain language of the statute expressly uses the term "employer" and "employment" without any reference to or mention of an independent contractor or other such business relationship. Thus, the natural reading of § 525(b) is that the debtor must be an employee of the defendant employer. The court in *In re McNeely,* however, would have us ignore the plain reading of § 525(b) by suggesting that all employee-employer relationships are covered by § 525(b):

> The anti-discrimination provisions of Section 525 forbids [*sic*] private employers from taking discriminatory action against a debtor. Congress' purpose in doing this is abundantly clear: Detors[sic] under the Bankruptcy Code are to be given a fresh start in their financial lives, and private employment practices which circumvent his policy are intolerable. With this national policy in place, it would be peculiar indeed if Congress intended that the word "employment" as used in Section 525(b) parallel the meaning of that legal term of art under state law. Shrewd employers, fearing possible liability, can easily structure their hiring practices to minimize the number of people in their hire who are "employees." Since the success of any debtor's fresh start depends in great measure upon his or her continued employment, it is difficult to believe that Congress gave the anti-discrimination protections only to those who are found to be part of an "employer-employee" relationship after an examination of the doctrine of respondent superior as used by the several states. A better view of Section 525(b) recognizes that Congress included all private employment relationships in the anti-discrimination provisions.

*In re McNeely,* 82 B.R. at 632. Based on this passage, the Court believes that *In re*

McNeely incorrectly goes beyond the plain meaning of § 525(b). As evidenced by the limited and restricted language of § 525(b), the efficacy of the code section is limited to debtors in employee-employer relationships. Congress did not include language such as "independent contractor" or "other employment relationship" when it wrote § 525(b); therefore, the plain meaning of § 525(b) does not extend anti-discrimination protection to non-employees of the defendant. "Had Congress intended an expansive interpretation of § 525(b), it could have so stated." *In re Madison Madison Int'l of Illinois,* 77 B.R. at 680. Moreover, "[w]here Congress wants to permit an action, it is capable of making that intention clear." *Id.* (citing *In re Clark,* 32 B.R. 711 (D.C.Wis.1983)). Therefore applying the Plain Meaning Doctrine as enunciated in *Ron Pair,* the Court can not reach any other conclusion than that the debtor must be an employee of the defendant.[6]

In addition to citing *In re McNeely* as supporting its position, the debtor offers legislative history as evidence that the interpretation of § 525(b) is liberally broad so as to be consistent with sound bankruptcy policy.[7] However, because the Court concludes that § 525(b) is unambiguous, any references to legislative history are superfluous and only need to be made in rare and exceptional circumstances. *See Garcia v. U.S.,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984). Notwithstanding this assertion that legislative history is unnecessary to interpret § 525(b), the Court notes the debtor's reference to the Senate and House Reports which contemplated that the courts should expand the anti-discrimination coverage to be consistent with bankruptcy public policy. *See supra* note 7. While the Court is aware of the national bankruptcy policy of giving a financial fresh start to the

---

6. The Court does not address the issue of whether the debtor would have the Court ignore the employment requirement of § 525(b) and consequently have the Bank liable under § 525(b) simply because the bank is a "private employer." This logic was considered by the court in *In re Briggs* and quickly dismissed as an implausible reading of § 525(b). *In re Briggs,* 143 B.R. at 444.

7. The debtor cites Senate and House reports for the position that the courts are to expand the anti-discrimination provisions of § 525(b) to be consistent with national bankruptcy policy. S.Rep. No. 989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5867; H.R.Rep. No. 595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6126.

debtor,[8] the Court is also aware of the mitigating national policy, as pronounced by Senator Orin Hatch of Utah, to "ensure that a fresh start does not become a head start." *In re Pilgrim,* 135 B.R. 314, 317 (C.D.Ill.1992)(citing *130 Cong.Rec.S. 8891* June 29, 1984). Furthermore, the Court's own research into the legislative history of § 525(b) suggests that the discrimination protection afforded by § 525(b) is limited to debtors in an employee-employer relationship:

> This section amends Section 525 of Title 11 to extend the protection against discrimination to persons employed in the private sector. Under this section, no private employer may terminate employment or discriminate with respect to employment against any person on the basis that the person had been or will be a debtor in bankruptcy, or has suffered insolvency pending a discharge.

*In re Tinker,* 99 B.R. at 960 (citing *S.Rep. No. 98–65,* 98th Cong. 1st Session 80 (1983)).[9] Furthermore, "[s]ection 525 does not require employers to give bankruptcy debtors preferential treatment." *In re Browning,* 176 B.R. 805, 807 (Bankr.M.D.Tenn.1995); *see In re Spaulding,* 116 B.R. at 572 ("[n]othing in the bankruptcy code requires the creditor to do business with the debtor. To require dealings would impermissibly extend the scope of the anti-discrimination provision.").

In summary, the Court refuses to expand the construction of § 525(b) by weakening the employee-employer relationship requirement. The correct reading of § 525(b) requires that the debtor be an employee of the employer-defendant. In the words of Judge Easterbrook, "too much 'liberality' will undermine the statute as surely as too literal an interpretation." *Matter of Erickson,* 815

F.2d 1090, 1094 (7th Cir.1987). As the debtor is not an employee of the Bank, there is no cause of action under § 525(b). Consequently, the underlying § 525(b) claim supporting the Motion To Reopen is not likely to be sustained when considered on its merits and, thus, no relief can be afforded the debtor. Therefore, as the Court is not able to accord relief to the debtor, the Motion To Reopen will not be granted under this prong of § 350(b).

## II. Reopen The Bankruptcy Case For Cause

■ A bankruptcy case may also be reopened under the "for other cause" prong of § 350(b), and the decision to reopen is left to the sound discretion of the Court. *In re Shelton,* 201 B.R. 147, 151 (Bankr.E.D.Va. 1996). The Court, however, must determine what circumstances will give rise to the Court properly exercising its sound discretion. According to Judge Tice, a court will invoke its discretion and deny the reopening of a bankruptcy case "where it appears that to do so would be futile and a waste of judicial resources." *In re Carberry,* 186 B.R. 401, 402 (Bankr.E.D.Va.1995). In *In re Walker,* Judge Adams breathed life into the meaning of the discretion requirement when he denied a Motion to Reopen because there would be a waste of judicial resources as the chance of substantial recovery to the estate was "remote."[10] *In re Walker,* 198 B.R. at 479. In addition, Judge Bostetter, in *In re Dove,* provided his interpretation of what constitutes "court's discretion" when he granted a Motion To Reopen because there was "reasonable cause to believe" that a preferential transfer existed.[11] *In re Dove,* 199 B.R. at 345.

---

**8.** [O]ne of the primary purposes of the bankruptcy act is to give debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt". *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971).

**9.** This legislative history statement was from the Senate report accompanying § 445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner to the Bankruptcy Act of 1984.

**10.** A creditor lending institution moved to have the debtor's case reopened so that the bankruptcy court could have jurisdiction over the debtor's lender liability action against the creditor. *In re Walker,* 198 B.R. at 478.

**11.** After the case had been dismissed, the trustee had moved for a Motion To Reopen because it alleged that preferential transfers had occurred prior to the bankruptcy filing. *In re Dove,* 199 B.R. at 344.

Without making a determination as to what constitutes sound discretion by the Court, the Court concludes that there is not sufficient cause to reopen the case under either interpretation. Applying Judge Tice's balancing test from *In re Carberry*, the Court believes that, in light of the conclusion that the debtor's § 525(b) cause of action lacks merit, a reopening of the bankruptcy case would be a waste of judicial resources. The Court also finds no cause to reopen under Judge Adams' standard because there is no relief to be accorded the debtor and, consequently, the chance of substantial recovery for the estate is "remote." Finally, there is no cause to reopen the case under Judge Bostetter's "reasonable cause to believe" standard for the same reasons. Therefore, irrespective of how the Court's discretion is measured, the Court concludes that there is no "cause" which justifies reopening the case under the third prong of § 350.

## CONCLUSION

In conclusion, the Court holds that:

(1) the allegations made by the debtor are sufficiently pleaded and argued to provide the record with enough specific information to enable to the Court to adjudicate the underlying § 525(b) claim based on its merits;

(2) there is not a likelihood that the underlying § 525(b) cause of action will be sustained on its merits because the debtor is not in an employment relationship with the defendant; and

(3) the reopening of the case would be futile and a waste of judicial resources in light of the Court's holding that the underlying § 525(b) action is not likely to be sustainable on its merits.

Based on the foregoing, the Court holds that the debtor's Motion To Reopen is DENIED.