In the Matter of Ruth A. SPAULDING, Debtor.

Ruth A. SPAULDING, Plaintiff,

v.

CITIZENS FEDERAL SAVINGS AND LOAN ASSOCIATION OF DAYTON, Defendant.

Bankruptcy No. 3–89–00047.
Adv. No. 89–0285.

United States Bankruptcy Court, S.D. Ohio, W.D.

March 29, 1990.

Wayne P. Novick, Centerville, Ohio, for debtor.

Randall J. Imwalle, Citizens Federal Sav. and Loan Ass'n of Dayton, Dayton, Ohio, for defendant.

## DECISION ON ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. Section 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district, is determined to be a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(A)—matters concerning the administration of the estate, (C) counterclaims by the estate against persons filing claims against the estate and (O) other proceedings affecting the adjustment of the debtor-creditor relationship.

This proceeding is before the court on Citizens Federal Savings and Loan Association of Dayton's Motion For Summary Judgment (Doc. 4) and the debtor's Motion Contra Motion For Summary Judgment (Doc. 5).

The following facts are undisputed: The debtor, Ruth Spaulding filed a Chapter 13 Petition on January 5, 1989. The defendant, Citizens Federal Savings and Loan Association of Dayton (Citizens), by a letter dated January 18, 1989, informed the debtor that "due to [ ] filing bankruptcy" it was "our decision to close out your checking account" (attachment to Doc. 1). In another letter dated January 27, 1989, Citizens informed the debtor that her account had

been closed as of January 26, 1989 and also enclosed a check "in the amount of $214.71" representing the funds remaining in her checking account. This letter also stated: "Your Rainbow Reserve account is still open, and the outstanding loan balance is due and payable. You will continue to receive monthly account statements which will assist you in making your payment each month." (attachment to Doc. 1). In a third letter dated February 6, 1989, defendant reiterated that the debtor's account had been closed because she had filed bankruptcy and also stated that Citizens had enclosed a check for $13.39 "which was inadvertently deducted" from the debtor's checking account (attachment to Doc. 1).

The debtor's complaint seeks a finding of contempt against Citizens and a determination of damages for violation of 11 U.S.C. § 362(a)(1), (a)(2), (a)(3) and (a)(6), the automatic stay, and 11 U.S.C. § 525(a) and (b), the anti-discrimination provision of the Code.

Citizens argues that summary judgment should be granted in its favor because there is no genuine issue of material fact and the letters it sent the debtor are not coercive, are mildly worded and do not represent harassment or an effort to collect on a debt. Citizens also contends that § 525(a) is inapplicable because the movant is not a governmental entity and § 525(b) is inapplicable since the debtor was not an employee of Citizens at the time that she filed her petition. The debtor in opposing the motion for summary judgment argues that the defendant presents two different reasons for closing the debtor's account and that this represents a sufficient factual dispute to make summary judgment inappropriate.

Fed.R.Civ.P. 56(c) provides that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In 1986 the Supreme Court in three cases revisited the Summary Judgment rule and

examined its evolution over time. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In a recent decision, *Street v. J.C. Bradford & Company*, 886 F.2d 1472, 1476 (6th Cir. 1989) the Sixth Circuit, noted that the Supreme Court's decisions ushered in a "new era" in summary judgment and commented:

> On the whole, these decisions reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact had tended to emasculate summary judgment as an effective procedural device (footnote omitted).

The Sixth Circuit further noted in *Street* at 1478:

> Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. If, after a sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate.

In *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2512 the Court noted that the standard for ruling on summary judgment mirrors that of the directed verdict: "Whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In terms of the respective burdens of proof on the movant and non-movant the Court in *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514 noted the following:

> The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury ver-

dict.... [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

*Accord, Matter of Warner,* 65 B.R. 512, 516–17 (Bankr.S.D.Ohio 1986).

■ Count I of plaintiff's complaint alleges that the defendant violated § 362(a)(1), (a)(2), (a)(3) and (a)(6) [1] of the Code. The court finds the plaintiff's claims based on § 362(a)(1) and (a)(2) to be without merit. Plaintiff has not alleged any facts regarding a judicial, administrative or other action, commenced by the defendant prepetition or postpetition with respect to the debtor or property of the debtor.

■ Plaintiff's § 362(a)(3) and (a)(6) claims arise out of the letters that the defendant sent to the debtor, the closing of the debtor's account and the withholding by the defendant of thirteen dollars and thirty-nine cents ($13.39) from the debtor's rainbow reserve account.

The defendant has not contested the plaintiff's recounting of the facts but argues in its motion for summary judgment that the letters did not represent an attempt to collect on a debt, but were simply to inform the debtor that her checking account privileges had been withdrawn. The defendant also contends that the $13.39 deduction was an oversight, which, upon being discovered, was promptly corrected.

Pursuant to the standard enunciated in *Anderson,* plaintiff, who ultimately bears the burden of proof of these allegations, must at this juncture come forward with evidence of a genuine issue of fact to preclude the entry of summary judgment. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514. The court notes that neither party asserts that there has not been sufficient time for discovery and the court finds the issues presented are properly before the court for a determination of summary judgment. *Matter of Sams,* 106 B.R. 485, 491–92 (Bankr.S.D.Ohio 1989).

Plaintiff offered no affidavits or other evidence in support of its allegation that the deduction of $13.39 and the letters represented an attempt to exercise control over property of the estate in contravention of § 362(a)(3) or an act to collect on a debt in violation of § 362(a)(6). There is no evidence that the defendant terminated the debtor's checking account privileges in order to receive preferential treatment of its claims, or to coerce the debtor into paying any debts she owed Citizens.

The court does not doubt that from Citizens' point of view the letters are mildly worded and non-coercive; however, it should be recognized that a creditor's standard letter stating that a prepetition debt is "due and payable" issued to a debtor after the filing of a bankruptcy is contrary to the language of the automatic stay, § 362(a)(6). The automatic stay is clearly intended to stop all collection efforts. *In re Smith,* 876 F.2d 524, 525–26 (6th Cir.1989); *Matter of Sams,* 106 B.R. 485, 490–91 (Bankr.S.D. Ohio 1989). While it may be an increased burden for creditors to take extra steps to prevent any violations of the automatic stay, creditors who fail to do so proceed at their own peril. *Matter of Brock,* 58 B.R. 797, 804–05 (Bankr.S.D.Ohio 1986). At the same time, this court recognizes that other courts have held that mere requests to pay, absent coercion or harassment, do not constitute an actionable violation of the automatic stay. Letters that are isolated and informational are less likely to result in

---

**1.** 11 U.S.C. § 362

(a) Except as provided in subsection (b) of this section a petition filed under 301, 302 or 303 of this title ... operates as a stay, applicable to all entities of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(6) an act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

violations of the automatic stay than are letters that are repetitive and request payment. *Morgan Guar. Trust Co. v. American Sav. And Loan,* 804 F.2d 1487, 1491 (9th Cir.1986). *See also In re Callender,* 99 B.R. 378, 379–80 (Bankr.S.D.Ohio 1989) where the court held that a similarly worded letter by a credit union notifying the debtor that it will terminate all services to any debtor who causes the credit union to suffer a loss, was not violative of § 362(a)(6). *Accord, Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81 (3rd Cir.1988).

Further, based on the absence of any evidence from the debtor that the defendant intentionally attempted to exercise control over property of the estate or to collect or recover its prepetition claim, and, noting that the evidence reflects that Citizens voluntarily paid two hundred fourteen dollars and seventy-one cents ($214.71) to the debtor and then voluntarily paid the remaining thirteen dollars and thirty-nine cents ($13.39), the court finds that Citizens is entitled to summary judgment in its favor as to Count I of the debtor's complaint.

The debtor alleges in Count II of the complaint that the defendant violated 11 U.S.C. § 525(a) and (b)[2] of the Code. The defendant argues that because the debtor's nonpayment of her overdraft credit line and the return of forty-six (46) of her checks for non-sufficient funds resulted in a loss to the defendant, consistent with established bank policy regarding accounts that cause the bank to suffer loss, the defendant closed the debtor's account. In support of its motion, the defendant filed an affidavit of its employee, William H. Farrell, who in his capacity as NOW Accounts Supervisor, is responsible for customer account records, including the subject account of the debtor. The plaintiff argues that the defendant has offered two different reasons for the closing of the debtor's account and that presents a sufficient factual dispute to make summary judgment inappropriate. In its letters to the debtor the defendant states that the debtor's account was closed because she had filed bankruptcy, while in its summary judgment memorandum the defendant states that the debtor's account was closed because she caused the defendant to suffer loss. Plaintiff also argues that the closing of the debtor's checking account imposes additional burdens on the debtor and impedes her chances of a successful reorganization. Plaintiff did not offer any further evidence in connection with these allegations.

As the Supreme Court noted in *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510 the mere suggestion of some factual dispute will not defeat a properly supported motion for summary judgment. The standard is no *genuine* issue of *material* fact. The facts here are clearly not in dispute, and all that remains is for the court to apply the law to the facts.

2. 11 U.S.C. Section 525
    (a) Except as provided in the Perishable Agricultural Commodities Act ... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
    (b) No private employer may terminate the employment or, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—
        (1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;
        (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
        (3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

■ As a preliminary matter the court notes that § 525(b) is inapplicable to this proceeding since it pertains to a private employer's termination of the employment of a debtor-employee and that is not the situation presented by the facts in this proceeding.

■ By its language section 525(a) includes only governmental units within its ambit. Plaintiff asserts that the defendant is a quasi-governmental entity and the defendant denies this allegation. The Code does not provide a definition for a quasi-governmental entity but 11 U.S.C. § 101(26) defines a governmental unit in the following manner:

> United States; State; Commonwealth; District, Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government;

Although the legislative history of section 525 suggests that in limited situations quasi-governmental units would also be subject to § 525(a):

> This section permits further development to prohibit actions by governmental and quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusion from a union on the basis or discharge of a debt to the union's credit union. HR Rep. No. 595, 95th Cong., 1st Sess. 366–67 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 81 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5867, 6323, reprinted in Norton Bankr. Code Pamphlet 1989–90 Ed. 433–434.

Several courts have held that Section 525(a) applies to quasi-governmental entities. *See, Saunders v. Reeher (In re Saunders),* 105 B.R. 781 (Bankr.E.D.Pa.1989); *Spruce Limited Partnership v. Lutz (In re Lutz),* 82 B.R. 699 (Bankr.D.Penn.1988); and Chobot, *Anti-Discrimination under the Bankruptcy Laws,* 60 Am.Bankr.L.J. 185, 190 (Spring 1986) for cases in which governmental and quasi-governmental entities were determined to be subject to section 525. However, the debtor has not offered any authority in support of its allegation that Citizens is a quasi-governmental entity encompassed by § 525, or introduced any evidence to suggest that the debtor's livelihood, or her fresh start have been endangered by Citizens' cancellation of her checking account. Nevertheless, assuming that Citizens is a quasi-governmental entity to which § 525(a) applies, the debtor would not have presented a claim that is actionable under section 525(a) of the Code.

Citizens' closing of the debtor's account upon learning of the debtor's filing is not actionable under § 525(a). The Court in *Brown,* 851 F.2d at 85 noted:

> Nothing in the bankruptcy code requires this creditor to do business with this debtor. To require dealings would impermissibly extend the scope of the code's anti-discrimination provisions, and Brown fails to make out a case warranting an extension on the particular facts of this case.
>
> . . . .
>
> [A]ny refusal of future services by a present creditor has some coercive impact. If we hold that the impact itself is sufficient to violate the bankruptcy injunction of Section 362 and Section 524, then a creditor—whether or not a governmental unit or employer—may be prevented from denying future services because of a prior discharged debt. The debtor could then do indirectly through Section 362 and Section 524 what she cannot accomplish directly through the anti-discrimination provision. We cannot find that Congress intended this result (footnote omitted).

■ To establish a cause of action under section 525(a) the plaintiff must demonstrate discrimination against a debtor solely because the debtor sought relief under Title 11. *See Norton v. Tennessee Department of Safety (In re Norton),* 867 F.2d 313, 316 (6th Cir.1989) and *Duffey v. Dollison,* 734 F.2d 265, 271 (6th Cir.1984).

Where the alleged discriminatory act reflects a policy determination of the defendant that is applied consistently to all parties, whether or not those parties sought Title 11 relief, it is not actionable under section 525(a). *Callender,* 99 B.R. at 380. The affidavit submitted in connection with Citizens' summary judgment motion (Doc. 4) states that it is Citizens' policy to close any account which results in a loss to the defendant. The debtor's use of this account resulted in a loan that will only be repaid at thirty-five percent (35%) of Citizens' allowed claim, provided the debtor completes her plan. Citizens' affidavit is unchallenged in this proceeding.

Accordingly, Citizens is entitled to summary judgment as to Count II of the debtor's complaint.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.