**In the Matter of Mark G. SOMMERSDORF, Judith A. Sommersdorf, Debtors.**

**Bankruptcy No. 1–91–03272.**

United States Bankruptcy Court, S.D. Ohio, W.D.

May 24, 1991.

Henry Acciani, Cincinnati, Ohio, for petitioner.

Ira H. Thomsen, Kettering, Ohio, for respondent.

## ORDER RE: DEBTORS' MOTION FOR CONTEMPT

J. VINCENT AUG, Jr., Bankruptcy Judge.

### BACKGROUND

The Debtors filed their Chapter 13 petition on May 24, 1991. Pursuant to 11 U.S.C. § 301, an Order for Relief was entered on the same date. The Debtors' plan, which provides for a 100% payment to Society National Bank, ("Society") was confirmed on September 16, 1991.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

The specific issue before the Court is whether the refusal to remove the notation on the non-debtor comaker's credit report constitutes contempt, where the creditor who caused the credit report notation to be made is receiving a 100% payment under Debtors' plan.

The broader related issue of whether this notation on a non-debtor comaker's credit report violates the automatic stay of action against the comaker is a serious question for the Chapter 13 practitioner who is often asked by his potential clients: "What effect will the Chapter 13 filing have on a comaker?"

## FINDINGS OF FACT

The underlying July, 1988 promissory note in favor of Society was signed by the Debtors and by their friend, William Parrish, ("Parrish"), a non-debtor. The loan proceeds were used by the Debtors to purchase a 1987 Oldsmobile Cutlass Ciera.

Subsequent to the Order For Relief, Society transmitted to Trans–Union Corporation ("Trans–Union") and Trans–Union published an entry on the credit report of Parrish reflecting the fact that Society had taken a profit and loss write off on the account. As a result of the credit report Parrish was unable to obtain a home loan. Prior to the filing of the pleadings on the issue, the Debtor requested that the credit report be corrected. This request was denied.

On January 22, 1992, Debtors filed their Motion for Contempt against Society and Trans–Union (Doc. 16). Society filed its answer on February 13, 1992 (Doc. 19). Trans–Union did not file a responsive pleading. A hearing on the motion was held on March 4, 1992.

## CONCLUSIONS OF LAW

Section 362 of the Bankruptcy Code defines the scope of the automatic stay as it pertains to the *Debtor*, by listing the acts that are stayed by the commencement of the case. One of the eight general prohibitions § 362(a)(6) stays is

> *any act to collect, assess, or recover a claim against the debtor* that arose before the commencement of the case under this title. (emphasis added).

The above paragraph applies to any "act" whether or not the act is related to a "proceeding." *Collier on Bankruptcy*, 362–44 (15th ed. 1992). This provision is intended to prevent creditor harassment of the debtor. The conduct prohibited by this provision ranges from that of an informal nature, such as telephone contact or dunning letters, to more formal judicial and administrative proceedings also stayed under § 362(a)(1). *Id. See, In re Hellums*, 772 F.2d 379, 381 (7th Cir.1985) (telephone call to debtor violates automatic stay, *citing* H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 342 [1977] ); *In re Price*, 103 B.R. 989 (Bankr.N.D.Ill.1989) (notice of intent to levy by IRS to debtor violates automatic stay); *and, In re Spaulding*, 116 B.R. 567 (Bankr.S.D.Ohio 1990) (letters sent by lender to debtor indicating that her checking account had been closed and lender's withholding of $13.39 did *not* amount to actionable violation of stay since the amount withheld was an oversight promptly repaid when discovered, the remaining amount in the account was voluntarily paid to debtor and there was no evidence that lender intentionally attempted to collect the prepetition claim.)

At the hearing, counsel for Society stated that federal banking audit requirements require a bank to charge off any amount which is more than four months in arrears and that it was Society's practice to do such. However, there is a distinction between an internal bank accounting procedure and the placing of a notation on an obligor's credit report. We find that the latter most certainly must be done in an effort to effect collection of the account. *See, In re Spaulding*, 116 B.R. 567, 570 (Bankr.S.D.Ohio 1990) (while it may be an increased burden for creditors to take extra steps to prevent violations of the automatic stay, creditors who fail to do so proceed at their own peril). Such a notation on a credit report is, in fact, just the type of creditor shenanigans intended to be prohibited by the automatic stay. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 342 (1977) *reprinted in* 1978 U.S.Cong. & Admin.News 5787, 6298 ("Paragraph (6) prevents creditors from attempting in any way to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage payment in spite of bankruptcy. Inexperienced, frightened or ill-counseled debtors may succumb ...").

Pursuant to § 1301(a) of the Bankruptcy Code, which creates a stay of action against a *codebtor*,

> ... *a creditor may not act,* or commence or continue any civil action, *to collect all or any part of a consumer debt of the debtor from any individual*

*that is liable on such debt with the debtor* ... (emphasis added)

On its face and as a whole, the stay created by § 1301 is not as broad as the stay created by § 362. But the policies of the two provisions are related and the two provisions must be read together. Section 1301 is designed primarily for the protection of the principal debtor by insulating that individual from indirect pressures exerted by creditors on friends, relatives and fellow employees of the Chapter 13 debtor. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 121–123, (1977) *reprinted in* 1978 U.S.Code Cong. and Admin.News 6082–84. It operates only as a procedural delay for the creditor who retains all of his substantive rights. *Id.* at 123. And, like § 362(a)(6), § 1301(a) prohibits "acts" to collect debts. Therefore, we find that the notation on the non-debtor comaker's credit report violates the automatic stay of action against the codebtor of § 1301.[1]

This violation of the stay is even more flagrant in view of the fact that Society would not have prevailed on a motion for relief from stay had it filed such a motion, because one of the parameters of § 1301(c) had been met. *See, Harris v. Fort Oglethorpe State Bank*, 21 B.R. 1019 (D.C.Tenn.1982) *aff'd* 721 F.2d 1052 (6th Cir.1983) (proposed Chapter 13 plan that did not pay off bank's loan on time did not require termination of stay against comaker where bank was fully protected even though forced to wait for that portion of debt to be paid under plan).

However, in the absence of caselaw on this specific issue, while we find that Society's actions did violate the stay of action against the codebtor created by § 1301, we do not find the actions of Society to be tantamount to civil contempt. Further, while § 362(h) states that an individual injured by any willful violation of a stay provided by that section *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, pu-

nitive damages, there is no such similar provision in § 1301.

It is hereby ORDERED that Society shall cause the profit and loss write off notation to be deleted from the non-debtor comaker's credit report and that Society shall cause the corrected credit report to be reissued to the affected parties.

While we have made a specific finding of a violation of the stay created by § 1301 rather than a violation of the stay created by § 362, the legislative history is clear that both provisions serve to protect the debtor. An award of damages to the Debtors is appropriate. At the hearing the Debtors offered no evidence of damages other than attorney fees and court costs. Counsel for Debtors is hereby ORDERED to provide the Court a billing statement indicating fees and expenses incurred regarding the within motion. After review of same, this Court will issue a further order granting reasonable attorney fees and court costs in favor of the Debtors and against Society.

The non-debtor comaker, William E. Parrish, Jr., was present at the hearing, but it was unclear as to whether or not he was represented by counsel. There was no evidence presented at the hearing as to the amount of his damages, only that he had been unable to obtain a loan. The Court reserves its ruling on this issue and this time and until further motion, if any, of the non-debtor comaker is filed.

IT IS SO ORDERED.

---

1. Section 1681c of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., states that a credit report may not contain a statement that an account has been placed for collection or charged to profit and loss which antedate the report by more than seven years. Accordingly, in a nonbankruptcy scenario, a credit report may reflect that an account was charged to profit and loss as long as such information is not more than seven years old.