**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. EC-16-1152-BJuTa |
| ROBERT C. KELLER and FINLEY ) JONES KELLER, ) | Bk. No. 12-22391 |
| Debtors. ) | |
| _____ ) | |
| ROBERT C. KELLER; FINLEY JONES) KELLER, ) | |
| Appellants, ) | |
| v. ) | **O P I N I O N** |
| NEW PENN FINANCIAL, LLC dba ) SHELLPOINT MORTGAGE ) SERVICING; THE BANK OF NEW ) YORK MELLON fka THE BANK OF ) NEW YORK AS TRUSTEE FOR THE ) CERTIFICATEHOLDERS OF CWMBS, ) INC., CHL MORTGAGE PASS- ) THROUGH TRUST 2004-HYB5, ) MORTGAGE PASS-THROUGH ) CERTIFICATES SERIES 2004-HYB5,) | |
| Appellees. ) _____ ) | |

Argued and Submitted on March 23, 2017,
at Sacramento, California

Filed - May 26, 2017

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Hon. Christopher D. Jaime, Bankruptcy Judge, Presiding

Appearances:     Scott J. Sagaria of Sagaria Law, P.C. argued for appellants Robert C. Keller and Finley Jones Keller; B. Ben Mohandesi of Yu Mohandesi LLP argued for appellees New Penn Financial, LLC dba Shellpoint Mortgage Servicing and Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2004-HYB5, Mortgage Pass-Through Certificates, Series 2004-HYB5.

Before:   BRAND, JURY and TAYLOR, Bankruptcy Judges.

BRAND, Bankruptcy Judge:

Chapter 13[1] debtors Robert and Finley Keller ("Debtors") appeal an order denying their motion for contempt and sanctions for violating the automatic stay and confirmation order against New Penn Financial, LLC dba Shellpoint Mortgage Servicing ("Shellpoint") and the Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2004-HYB5, Mortgage Pass-Through Certificates, Series 2004-HYB5 (collectively "Defendants"). The issue before the bankruptcy court was whether a creditor's postpetition reporting of overdue or delinquent payments to a credit reporting agency ("CRA"), regardless of the information's accuracy, is a per se violation of § 362(a)(6) and constitutes prohibited collection activity.

This question is an issue of first impression before the Panel. We hold that it is not, and we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Debtors filed their chapter 13 bankruptcy case on February 7, 2012. Shellpoint is the servicer of the loan secured by Debtors' residence. Prepetition arrears on the loan were approximately $11,400.

Debtors' fifth amended chapter 13 plan, confirmed by the bankruptcy court, provided for payment of the prepetition arrears; maintenance of ongoing contractual installments due on the loan

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

would be paid by the chapter 13 trustee. Debtors made all payments under the plan. Prepetition arrears were cured by March 31, 2015. At the time of Debtors' contempt motion, the trustee was making the ongoing monthly loan payments under the plan.

In January 2016, Mrs. Keller obtained a 3-bureau credit report (Experian, Equifax and Transunion) containing the following information Shellpoint furnished to these three CRAs about the loan:

Payment History: 120 to 90 days late on all three bureau reports for March 2014 through December 2015.

Payment Status: Account reported as "past due 150 days," "at least 120 days or more then four payments past due" and "120 days past due."

Past Due Balance: All three bureau reports list the account as $9,297.00 past due.

Bankruptcy Status: Shellpoint failed to report that the account was included in or part of a chapter 13 repayment plan.

Mr. Keller's 3-bureau credit report contained similar information furnished by Shellpoint:

Payment History: 120 to 90 days late on all three bureau reports for March 2014 through March 2015.

Past Due Balance: All three bureau reports list the account as $9,297.00 past due.

On January 27, 2016, Mr. Keller was denied credit in the purchase of a new vehicle. The denial letter indicated that Mr. Keller was an "Unacceptable Credit Risk" and that credit was denied "based in whole or in part on information obtained on a report" from Experian.

Debtors moved for contempt and sanctions against Defendants for violating the automatic stay and confirmation order. Debtors argued that by reporting misleading and inaccurate information on

-3-

their credit reports — i.e., that the account was severely delinquent and with a past due balance — Defendants had willfully acted to collect on a debt that was subject to the automatic stay and confirmation order in violation of §§ 105, 362 and 1327.

In support of their stay violation claim, Debtors argued that reporting of an account which has been included in a chapter 13 bankruptcy as "past due" or "late" is a per se violation of the automatic stay, because reporting late payments or past due balances is classic collection activity under § 362(a)(6). Debtors argued that such reporting did more than acknowledge that the debt still exists; it suggested that Debtors had failed to perform and served no other purpose than to coerce them into paying the debt directly to Shellpoint, despite the trustee's payments.

Debtors also argued that the exception to the automatic stay under § 362(b)(2)(E), added by BAPCPA in 2005, that allows credit reporting of overdue child support obligations, conversely means that negative credit reporting otherwise falls within the coverage of § 362(a) and constitutes prohibited collection activity under § 362(a)(6). Debtors contended legislative history of this added exception supported their argument; the Congressional Record states that § 362(b)(2)(E) was added "[t]o facilitate the domestic support collection efforts by governmental units . . . ." H.R. Rep. No. 109-31(I), at 17 (2005).

Lastly, Debtors relied on In re Sommersdorf, 139 B.R. 700 (Bankr. S.D. Ohio 1991), a published case supporting their position.

At the hearing, Debtors' counsel clarified that the issue

-4-

before the bankruptcy court was not the accuracy of what was reported to the CRAs but rather whether reporting that a payment is past due or late violates the automatic stay. The bankruptcy court confirmed that the legal issue to be decided was "whether past-due credit reporting is a per se violation of § 362," and took the matter under submission. Hr'g Tr. (Apr. 5, 2016) 8:25-9:7; 10:19-24.

In a written memorandum, the bankruptcy court denied Debtors' motion for contempt and sanctions for violation of the automatic stay and confirmation order. Debtors timely appealed the ensuing order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (L). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in determining that the act of postpetition credit reporting of overdue or delinquent payments is not a per se violation of § 362(a)(6)?

2. Did the bankruptcy court err in determining that the credit reporting did not violate the confirmation order under § 1327(a)?

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. Hansen v. Moore (In re Hansen), 368 B.R. 868, 874 (9th Cir. BAP 2007). "De novo review requires that we consider a matter anew, as if no decision had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014). Factual findings are clearly

erroneous if they are illogical, implausible or without support in the record.  Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

We review de novo the bankruptcy court's determination as to whether the automatic stay provisions of § 362 have been violated.  Palm v. Klapperman (In re Cady), 266 B.R. 172, 178 (9th Cir. BAP 2001), aff'd, 315 F.3d 1121 (9th Cir. 2003); Advanced Ribbons & Office Prods., Inc. v. U.S. Interstate Distrib., Inc. (In re Advanced Ribbons & Office Prods., Inc.), 125 B.R. 259, 262 (9th Cir. BAP 1991) (the scope of the automatic stay under § 362(a)(6) is "a legal issue which we review **de novo**").

We review the bankruptcy court's decision regarding civil contempt for abuse of discretion.  Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003).  Underlying factual findings made in connection with a civil contempt order are reviewed for clear error.  Id.

## V. DISCUSSION

**A.  The bankruptcy court did not err in determining that the act of postpetition credit reporting of overdue or delinquent payments is not a per se violation of  § 362(a)(6).**

Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before" the filing of the petition.  This provision generally prohibits creditors from making demand on a debtor to pay a prepetition debt or engaging in communications with the debtor in an effort to collect the debt.  Debtors contend that Shellpoint violated § 362(a)(6) by postpetition reporting of overdue or delinquent loan payments, because such credit reporting is a prohibited collection activity.

We hold that postpetition credit reporting of overdue or

-6-

delinquent payments, without more, does not violate the automatic stay as a matter of law.

Two district court decisions in the Northern District of California have expressly rejected the argument that postpetition credit reporting of overdue or delinquent payments is a per se violation of the automatic stay.[2] See Giovanni v. Bank of Am., N.A., 2012 WL 6599681, at *5 (N.D. Cal. Dec. 18, 2012); Mortimer v. JP Morgan Chase Bank, N.A., 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012).

In Mortimer, the debtor argued that the automatic stay prohibited the bank's reporting of delinquent payments while the bankruptcy case was pending, contending that such reporting "violated the letter and the spirit of 11 U.S.C. § 362." 2012 WL 3155563, at *3. The district court rejected that argument, holding that:

> Section 362 does not stand for the proposition that an individual is not obliged to make timely payments on his accounts while his petition for bankruptcy is pending. Rather, § 362 limits collection activities in pursuit of claims that arose before the bankruptcy petition. While it might be good policy in light of the goals of bankruptcy protection to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code nor the [Fair Credit Reporting Act] ("FCRA") does so.

Id.

In Giovanni, the debtor argued that the bank's reporting of late payments once she filed her bankruptcy case was a "'prohibited creditor shenanigan'" and violated § 362. 2012 WL 6599681, at *5 (quoting In re Sommersdorf, 139 B.R. at 702).

---

[2] Debtors' counsel in this case also represented the plaintiffs in Giovanni and Mortimer.

-7-

Relying on Mortimer, the district court rejected debtor's argument and further noted that the debtor cited no case in which a court found negative postpetition credit reporting alone to be a violation of the automatic stay. Id. at *5-6.

Debtors contend the bankruptcy court erred by relying on Mortimer and its progeny because those cases dealt only with "accuracy under the FCRA and not § 362." While it is true that Mortimer and Giovanni were decided in the context of the FCRA, it is clear that the argument Debtors raise here with respect to § 362 was also raised and rejected in both cases.[3]

We also reject Debtors' argument that the bankruptcy court erred by relying on Mortimer but failing to acknowledge the "split of authority" regarding the issues presented in Mortimer, citing Grantham v. Bank of Am., N.A., 2012 WL 5904729 (N.D. Cal. Nov. 26, 2012) and Venugopal v. Digital Fed. Credit Union, 2013 WL 1283436, at *3 (N.D. Cal. Mar. 27, 2013). The issue in both Grantham and Venugopal was the accuracy of the credit reporting and claims under the FCRA and its California counterparts, not whether the credit reporting violated the automatic stay.

We note the dearth of case law on the precise issue before us. Most courts have addressed this issue in the context of the discharge injunction. The discharge injunction serves as a broad injunction against a wide range of collection activities for discharged debts. See § 524(a)(2). Debtors fault the bankruptcy court for relying on such cases for its ruling, arguing that these

---

[3] In another case, Debtors' attorneys attempted to distinguish Mortimer, arguing that the case "focused on the automatic stay." Mestayer v. Experian Info. Sols., Inc., 2016 WL 631980, at *3 (N.D. Cal. Feb. 17, 2016).

-8-

cases stand merely for the proposition that reporting certain types of credit information, such as a balance or a mere existence of a debt, is not collection activity that runs afoul of § 362 or § 524. Debtors argue that while such information may have an "adverse" effect on a credit report (the term the bankruptcy court used and Debtors take issue with), it has a different purpose and effect than "overdue" or "delinquent" payment reporting and is distinguishable from the "mere act of credit reporting."

We understand the distinction Debtors attempt to make here but conclude that, because the standard for violations of the automatic stay and the discharge injunction are similar,[4] the discharge injunction cases are relevant and persuasive. These cases stand for the proposition that negative credit reporting, without more, does not violate the discharge injunction. The debtor must show that the credit reporting was done with the purpose of coercing the debtor to pay the reported debt.

In Mahoney v. Washington Mutual, Inc. (In re Mahoney), 368 B.R. 579 (Bankr. W.D. Tex. 2007), the issue before the bankruptcy court was whether reporting a discharged debt constitutes an "act" to collect the debt in violation of the discharge injunction. The court held that the mere reporting of credit information about a debtor is not an act to collect a discharged debt within the meaning of the statute, unless the evidence shows there is a linkage between the act of reporting and the collection or

---

[4] See ZiLOG, Inc. v. Corning (In re ZiLOG), 450 F.3d 996, 1008 n.12 (9th Cir. 2006).

-9-

recovery of the discharged debt. Id. at 584.[5] The following courts are in agreement. See Montano v. First Light Fed. Credit Union (In re Montano), 488 B.R. 695, 710 (Bankr. D. N.M. 2013) (reporting discharged debt as "past due" is facially permissible and does not constitute a per se violation of the discharge injunction, but such act could be found to violate the discharge injunction if its objective effect was to pressure debtor into paying the discharged debt); Russell v. Chase Bank USA (In re Russell), 378 B.R. 735, 742 (Bankr. E.D.N.Y. 2007) (reporting a discharged debt can violate the discharge injunction if done for the specific purpose of coercing payment); Lohmeyer v. Alvin's Jewelers (In re Lohmeyer), 365 B.R. 746, 750 (Bankr. N.D. Ohio 2007) (same); Smith v. Am. Gen. Fin. Inc. (In re Smith), 2005 WL 3447645, at *3 (Bankr. N.D. Iowa Dec. 12, 2005) ("past due" credit report notation can be a violation of the discharge injunction if made with the intent to collect a debt); Helmes v. Wachovia Bank, N.A. (In re Helmes), 336 B.R. 105, 109 (Bankr. E.D. Va. 2005) (bank that mistakenly reported debt as "past due" rather than discharged, absent any other evidence that it did so with intent to collect the debt, did not violate the discharge injunction); Irby v. Fashion Bug (In re Irby), 337 B.R. 293, 296 (Bankr. N.D. Ohio 2005) (reporting of discharged debt does not run afoul of the discharge injunction unless it is also coupled with other actions undertaken by the creditor to collect or recover on the debt); In

---

[5] The Mahoney court also aptly notes that unauthenticated copies of credit reports or conclusory allegations that furnishing credit information is done with intent to collect a debt will not serve as competent evidence of a creditor's attempt to collect a debt. 368 B.R. at 592-94.

-10-

re Goodfellow, 298 B.R. 358, 362 (Bankr. N.D. Iowa 2003) (finding a violation of the automatic stay and discharge injunction based on creditor's reporting of the debtor's debt as "past due" in addition to its collection letters and threatening phone calls to debtor attempting to collect the debt); Vogt v. Dynamic Recovery Servs. (In re Vogt), 257 B.R. 65, 71 (Bankr. D. Colo. 2000) (false credit reporting, if not done to extract payment of the debt, is not an act proscribed by the Code).

The other line of cases addressing the issue of negative postpetition credit reporting involve alleged violations of the codebtor stay under § 1301. Debtors contend the bankruptcy court erred by relying on these cases, because they largely stand for the proposition that the codebtor stay exists to protect the debtor rather than the codebtor, and suggest that a codebtor's recourse for standing purposes may lie with the FCRA rather than the Code.

While the purpose of the codebtor stay and standing may have been at issue in these cases, they too hold that negative credit reporting, without more, does not violate the codebtor stay. See In re Burkey, 2012 WL 5959991, at *4 (Bankr. N.D.N.Y. Nov. 28, 2012) ("Though there is little case law addressing whether reporting negative information to a credit reporting agency constitutes an act to collect a debt, the court is persuaded by those courts that hold the credit reporting must be part of a broader effort to collect the debt to be a violation of the codebtor stay[.]"); In re Juliao, 2011 WL 6812542, at *4 (Bankr. E.D. Mich. Nov. 29, 2011) (bank's reporting of codebtor's past due payments to CRAs was not an act to collect the debt and therefore

-11-

did not violate § 1301); <u>Singley v. Am. Gen. Fin. (In re Singley)</u>, 233 B.R. 170, 173 (Bankr. S.D. Ga. 1999) (for a violation of the automatic stay under § 362 or the codebtor stay under § 1301 there needs to be a showing that an adverse report to a credit bureau was made with the intent to harass or coerce the debtor and/or the codebtor into paying the prepetition debt).

Finally, the few cases addressing the issue of negative credit reporting in the context of § 362, in addition to <u>Mortimer</u> and <u>Giovanni</u>, hold that postpetition negative credit reporting alone is not an act to collect a debt in violation of the stay; such reporting must have been done with the intent to harass or coerce the debtor to pay the reported debt. <u>See</u> <u>In re Haley</u>, Case No. 15-10712 (Bankr. D. Nev. Sept. 8, 2016) (inaccurate credit reporting, without evidence of creditor's intent to coerce debtor into paying the reported debt, does not violate the automatic stay as a matter of law); <u>Weinhoeft v. Union Planters Bank, N.A. (In re Weinhoeft)</u>, 2000 WL 33963628, at *2 (Bankr. C.D. Ill. Aug. 1, 2000) ("Even if it is shown that the Bank's reports to the credit-reporting agencies contain truthful information [about debtors' delinquent mortgage payments], such a report, if made with the intent to harass or coerce a debtor into paying a pre-petition debt, could be deemed a violation of the automatic stay."); <u>Smith v. United Student Aid Funds, Inc. (In re Smith)</u>, 2000 WL 33710884, at *4 (Bankr. D.S.C. Feb. 3, 2000) (rejecting debtor's argument that postpetition negative credit reporting violated § 362(a)(6) and concluding that reporting was not an act to collect because it did not extract payment even if it promoted it). <u>See also</u> <u>Hickson v. Home Fed. of Atlanta</u>, 805 F. Supp. 1567,

-12-

1573 (N.D. Ga. 1992), aff'd, 14 F.3d 59 (11th Cir. 1994) ("Section 362 contains no language prohibiting creditors or any other party from making legitimate reports [of delinquent mortgage payments] to credit agencies regarding parties that have filed for bankruptcy.").[6]

Notably, none of the cases cited above held that negative credit reporting, as a matter of law, is a collection activity that violates § 362, § 524 or § 1301. The only case supporting Debtors' argument is Sommersdorf. There, the bankruptcy court held that the codebtor stay under § 1301 was violated when the creditor bank had reported an auto loan debt as "written off" when in fact the loan was paid in full under the debtor's chapter 13 plan. As a result of a negative credit report, the codebtor was unable to obtain a home loan. 139 B.R. at 701. The bank argued that federal banking audit requirements required it to charge off any amount that was more than four months in arrears. Id. Rejecting this argument, the court held:

---

[6] Debtors contend the bankruptcy court found that the information Shellpoint furnished was inaccurate. Debtors fail to cite to the record where that finding was made, and we do not see where the court made any such finding. Debtors continue that the bankruptcy court erred by not considering the accuracy of the credit report; it could have found a per se violation of the reporting of overdue payments when such a report was inaccurate.

As the bankruptcy court noted, although Debtors appeared to raise accuracy of the report as an issue in their motion, counsel at oral argument stated that accuracy of the credit information reported was irrelevant to whether or not negative credit reporting violated the automatic stay. Accordingly, the court addressed the issue without considering accuracy. Because Debtors affirmatively abandoned the accuracy issue at oral argument they have waived it on appeal. See Reynoso v. Giurbino, 462 F.3d 1099, 1110 (9th Cir. 2006) (citing Russell v. Rolfs, 893 F.2d 1033, 1038-39 (9th Cir. 1990)); Sheehan v. Marr, 207 F.3d 35, 42 (1st Cir. 2000) (appellate court need not consider issue so explicitly abandoned below).

-13-

> [T]here is a distinction between an internal bank accounting procedure and the placing of a notation on an obligor's credit report. We find that the latter most certainly must be done in an effort to effect collection of the account. See, In re Spaulding, 116 B.R. 567, 570 (Bankr. S.D. Ohio 1990) . . . . Such a notation on a credit report is, in fact, just the type of creditor shenanigans intended to be prohibited by the automatic stay. H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 342 (1977) reprinted in 1978 U.S. Cong. & Admin. News 5787, 6298 (omitted).

Id. Cf. Bruno v. First USA Bank (In re Bruno), 356 B.R. 89, 91 (Bankr. W.D.N.Y. 2006) (credit reporting could constitute an act to collect a debt, but because creditor's reporting of the debt occurred prepetition the court declined to extend the discharge injunction to cause the creditor, post-discharge, to update its reporting of discharged debt).

We respectfully do not find Sommersdorf persuasive. First, the Sommersdorf court provided little analysis to support its holding, and what authority it did rely upon does not support it. It cited the Congressional Record, which is silent on credit reporting but speaks only of debtors feeling pressured to pay prepetition debts when contacted by creditors on the telephone. 139 B.R. at 701. Its reliance on Spaulding is also misplaced. Spaulding did not involve credit reporting but rather letters sent directly to the debtor from her bank about closing her account due to the bankruptcy filing, the closing of the debtor's account and the bank's withholding of some of the account funds. 116 B.R. at 570. The debtor contended that the creditor's actions violated the automatic stay. Id. Because of the absence of any evidence that the bank intentionally attempted to collect or recover a debt, the court granted the bank summary judgment. Id. at 570-71. Thus, Spaulding does not stand for the proposition that negative

-14-

credit reporting is an act to collect a debt in violation of § 362(a)(6). As the bankruptcy court so eloquently put it in Mahoney: "The rhetoric in Sommersdorf writes checks that the authorities cannot cash." 368 B.R. at 586.

Second, as the bankruptcy court recognized and as we have pointed out with the above cases, Sommersdorf's per se analysis has been rejected or largely not followed. In addition, there were other affirmative acts and facts on which the court could have concluded that the creditor's negative credit reporting was done for the purpose of attempting to collect the debt. Prior to filing the motion alleging the stay violation, the debtor requested the creditor to remove the charge-off notation but the creditor refused. Also, the creditor was receiving a 100% payment of its claim and could not have prevailed on a motion for relief from stay. Lastly, Sommersdorf is inconsistent with Ninth Circuit law, which requires evidence indicating harassment or coercion to establish a violation under § 362(a).

In Morgan Guar. Tr. Co. of N.Y. v. Am. Sav. & Loan Ass'n, 804 F.2d 1487, 1491 (9th Cir. 1986), the issue was whether presentment of the debtor's bearer notes to a third party bank postpetition violated the automatic stay under § 362(a)(6). The Ninth Circuit Court of Appeals held that "the language and purposes of section 362(a) do not bar mere requests for payment unless some element of coercion or harassment is involved."[7] Likewise, an act does not violate the stay unless it immediately or potentially threatens

---

[7] Congress amended § 362 in 1985 to provide that presentment of a negotiable instrument is not a violation of § 362(a), as now codified in § 362(b)(11). However, we believe the Ninth Circuit's holding that mere requests for payment do not constitute a stay violation absent coercion or harassment relevant and is still good law.

-15-

the debtor's possession of his or her property, such that the debtor is required to take affirmative acts to protect his or her interest. Id. We fail to see how negative credit reporting, standing alone, could be a violative act.

In Zotow v. Johnson (In re Zotow), 432 B.R. 252, 259 (9th Cir. BAP 2010), the Panel held in the context of a motion alleging a creditor's violation of the automatic stay under § 362(a)(6), that "one distinguishing factor between permissible and prohibited communications is evidence indicating harassment or coercion." Thus, in this circuit, negative credit reporting, standing alone, is insufficient to show a violation of the automatic stay under § 362(a)(6).[8]

Debtors want us to hold that the act of reporting overdue or delinquent payments during the pendency of a chapter 13 bankruptcy is collection activity that violates the automatic stay because its sole purpose is to coerce a debtor into paying the debt. We

---

[8] We also note Bell v. Clinic Labs. of Haw. (In re Bell), 2008 WL 8444796 (9th Cir. BAP Feb. 11, 2008). In that case, a chapter 13 bankruptcy petition was filed in October 2005 and the plan paid off early, resulting in a discharge on March 13, 2007. Despite receiving notice of the bankruptcy, the creditor continued to send debtor over seventeen demand letters between 2006 and 2007. The creditor also retained a collection agency to pursue the prepetition debt, and thereafter the collection agency reported the discharged debt to the CRAs.

The only issue before the Panel was whether the bankruptcy court abused its discretion in denying debtor's request for attorney's fees once the creditor was found to have willfully violated the automatic stay. Id. at *2. While the negative credit reporting was one factor supporting debtor's claim for damages, the Panel did not conclude that the creditor's negative reporting, standing alone, violated the automatic stay. Rather, this fact combined with the creditor's other overt collection acts — sending seventeen collection letters during the postpetition period — is what violated the stay because the creditor was clearly "attempt[ing] to collect a prepetition debt." Id. at *3.

In other words, the Panel in Bell concluded that the debtor had met his burden of proving that the creditor's cumulative communications were coercive and harassing. This is consistent with the law of this circuit.

-16-

reject this argument because it presumes that no other reasons explain why a creditor would furnish negative credit information to CRAs. We believe the bankruptcy court in <u>Helmes</u> stated it best in rejecting this same argument:

> The debtor asserts that the only reason for a creditor to submit such a derogatory report is to collect the debt. The debtor is certainly correct that such a derogatory notation on a credit report may have the effect of causing some debtors to pay the discharged debt, but that does not prove that it was submitted with that intention. The argument assumes that there is no other reason why such a derogatory report would be submitted and, concludes that it must have been submitted with the proscribed intent. The debtor's argument fails if there is another reason why the derogatory report was made.

336 B.R. at 109. In <u>Helmes</u>, another reason for the negative credit reporting was mistake.

Another reason for reporting a delinquent debt that does not have a direct purpose of collecting the debt is to share information relevant to credit granting decisions:

> [A] distinction must be made between acts which have as their direct and natural purpose the collection of debts and acts which have some other lawful purpose but could also be used (or, more accurately, misused) to coerce payment of a debt. The reporting of a delinquent debt to a credit reporting agency is not inherently an act to collect a debt but rather to share information relevant to credit granting decisions. A creditor reports both performing and delinquent accounts in the expectation that other credit grantors will do the same, enhancing each creditor's ability to evaluate proposed credit transactions and to avoid extending credit or making loans to poor credit risks.

<u>In re Jones</u>, 367 B.R. 564, 569 (Bankr. E.D. Va. 2007).[9]

We are also not persuaded by Debtors' argument with respect

---

[9] Debtors cite <u>In re Thistle</u>, 1998 WL 35412015 (Bankr. E.D. Va. July 17, 1998), which they claim held "reporting the debt to the credit bureau as 'bad debt' with a past due balance could hardly have any purpose except to coerce the debtors into paying the debt." They also accuse the bankruptcy court for having cited <u>Thistle</u> improperly. We could not locate Debtors' quoted passage anywhere in <u>Thistle</u>.

-17-

to § 362(b)(2)(E). That provision, added by BAPCPA in 2005, excepts from the automatic stay "the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act." Debtors contend that since the act of reporting overdue domestic support obligations has been listed as an exception to the automatic stay in § 362(b), then all other instances of overdue credit reporting must be prohibited by § 362(a).

Prior to BAPCPA, the automatic stay did not bar commencement of an action or proceeding to establish paternity, to establish or modify an order for alimony, maintenance or support, or to collect such debts from property that was not property of the estate. However, BAPCPA revamped the way the automatic stay applies to domestic matters. Under the new § 362(b), it is now easier for a spouse to bring or to continue actions against the debtor regarding child custody, visitation matters, domestic violence issues, or pursuit of state remedies for nonpayment of domestic support obligations such as the suspension of a driver's, occupational or professional license, and to report overdue support debts to credit agencies. See 17 J. Bankr. L. & Prac. 3 Art. 1, Edward W. Vopat, Domestic Support Obligations Under the Revised Bankruptcy Code (2008).

Thus, BAPCPA's expansion with respect to domestic relation proceedings in § 362(b) clearly evidenced congressional intent to expand and clarify which domestic relation proceedings are not covered by the automatic stay. Therefore, we disagree with Debtors that the addition of § 362(b)(2)(E) necessarily implies that all other instances of negative credit reporting are barred

-18-

by the automatic stay.

Furthermore, to read § 362(b)(2)(E) as Debtors suggest — that it creates a singular and exclusive exception to § 362(a) for credit reporting — flies in the face of § 1681c(a)(1)[10] of the FCRA, which permits the credit reporting of bankruptcies for a period of up to ten years, and would require the court to conclude that Congress intended to invalidate that FCRA provision through an amendment of § 362(b)(2)(E). Debtors' interpretation of § 362(b)(2)(E) would be at odds with what Congress has intended in § 1681c(a)(1) of the FCRA. See Morton v. Mancari, 417 U.S. 535, 551 (1974) ("[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intent to the contrary, to regard each as effective."); Posadas v. Nat'l City Bank of N.Y., 296 U.S. 497, 503 (1936) (when Congress passes two statutes that may touch on the same subject, we give effect to both unless doing so would be impossible).

Accordingly, we hold that the act of postpetition credit reporting of overdue or delinquent payments while a bankruptcy case is pending is not a per se violation of § 362(a)(6).

**B.    The bankruptcy court did not err in determining that the credit reporting did not violate the confirmation order under § 1327(a).**

A violation of the confirmation order under § 1327(a) is an act of contempt and may be remedied under § 105. In re Dendy, 396

---

[10]    See 15 U.S.C. § 1681c(a)(1). See also In re Kuehn, 563 F.3d 289, 291 (7th Cir. 2009) (reviewing § 1681c and noting that within ten years from the date of discharge a prospective creditor may consider discharged debts (minus a few exceptions under the Code) in determining creditworthiness and reasoning that "yesterday's failure to pay is a proper basis for tomorrow's refusal to extend credit.").

-19-

B.R. 171, 179-80 (Bankr. D.S.C. 2008). For contempt, the moving party must show by clear and convincing evidence the contemnors violated a specific and definite order of the court. Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002).

Debtors argued that Shellpoint's reporting of past due balances on Debtors' credit reports violated the confirmation order. First, Debtors argued Shellpoint was bound by the chapter 13 plan, and its actions of reporting past due payments to CRAs failed to conform to the plan's terms. Second, § 2.08(b)(5) of the plan required that "[p]ostpetition payments made by Trustee and received by the holder of Class 1 claims shall be applied as if the claim were current and no arrearage existed on the date the case was filed." Thus, argued Debtors, the plan required Shellpoint "to report all timely made postpetition payments as being current as though no default existed," and Shellpoint had failed to comport its reporting of the account with this requirement. Defendants countered that Debtors' plan was silent about credit reporting, and § 2.08(b)(5) of the plan did not refer to credit reporting as Debtors had argued; it only governed the manner in which payments of the arrearage would be applied to the claim.

The bankruptcy court found that the confirmation order did not require Defendants to report — or not report — anything regarding Debtors' credit information. The confirmation order neither directed nor prohibited credit reporting. Debtors were reading too much into § 2.08(b)(5), attempting to make the word "applied" synonymous with "report." The court reasoned that in order to reach the conclusion Debtors suggested, it would have to

-20-

infer a nexus between the application and reporting of payments. In other words, the court would have to read into the plan what the plan did not expressly state. Hence, this meant — at least with respect to credit reporting — Debtors' confirmed plan was not definite and specific. Accordingly, Defendants could not be found in contempt.

We perceive no error in the bankruptcy court's ruling. The confirmed plan is entirely silent on the issue of credit reporting. Debtors contend that "applied" necessarily includes "reporting" but fail to cite any authority for this contention. To the extent Debtors contend the postpetition credit reporting is erroneous and does not match Defendants' application of Debtors' loan payments under the confirmed plan, as the bankruptcy court noted, the remedy for that is not in the Code but perhaps in the FCRA.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.